## LEWIS SLOTHOWER, Respondent, v. EDGAR W. CLARK, Appellant.

**Kansas City Court of Appeals, February 1, 1915.**

1. **NEGLIGENCE: Automobile: Chauffeur: Orders: Liability.** A chauffeur in the employ of the owner of an automobile drove the owner to church in Kansas City. On getting out at the church, the owner ordered the chauffeur to go after his son at a place about nine blocks west of the church, bring the son to the church and there wait to take them home when services were over. The chauffeur drove several blocks in an opposite direction to collect a debt owing to him by a friend, collected the debt and invited his friend to ride back with him on the

Slothower v. Clark.

same seat. At his friend's request he let him handle the steering wheel and drive the machine. On their way back to where the owner's son was, the machine collided with a hearse and injured those in charge of it. It was *held* that the owner was liable, even though his machine was being driven by the chauffeur's friend at the time of the collision.

2. ———: ———: ———: ———. Orders of care in driving an automobile and directions not to let any one else drive it will not excuse the owner from an act of the chauffeur injuring another, though it occurred on account of violating such orders.

3. ———: Indirect Course: Private Errand. The fact that the chauffeur in obeying instructions of the master to go to a certain place, drives the automobile out of a direct course, to another place on an errand of his own will not free the master of liability for an injury to a third party in a collision occurring on the way back to the place he was directed to go.

4. ———: Chauffeur: Invited Friend: Negligence. If a chauffeur in charge of the master's automobile invites a friend to ride on the seat with him and permits the friend to take charge of the steering wheel and run the machine, and the latter negligently collides with a hearse and injures those in charge of it, the master is liable.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn,* Judge.

AFFIRMED.

*Hadley, Cooper & Neel* for appellant.

*Sebree, Conrad & Wendorff* for respondent.

ELLISON, P. J.—Plaintiff's action is for personal injury received in a collision between a hearse on which he was riding and defendant's automobile. The judgment in the trial court was for plaintiff.

It appears that defendant had a chauffeur in his employ who drove the machine for him. That on Sunday morning the chauffeur drove him and his wife to church near Tenth and Harrison streets, Kansas City, Missouri, arriving there at eleven o'clock. Before

going into the church defendant directed the chauffeur to go to the "Commerce Building," about nine blocks west from the church, and get his son, then return back by the church and wait to take them home. Instead of performing these services directly, the chauffeur went a distance of six blocks east and five blocks south of the church to collect a debt owing to him by a man named Sweeny. In doing this he was practically going in an opposite direction from the Commerce Building. He collected what was due him and invited Sweeny in the machine to ride on the seat beside him and started for the Commerce Building where he was to get defendant's son. Sweeny asked the chauffeur to let him drive the machine and the chauffeur did so by exchanging seats and letting him take charge of the steering wheel. On the way the machine collided with a hearse at Fourteenth and Paseo streets whereby plaintiff was injured.

There was ample evidence to take the case to the jury on the question of negligence on the part of the driver of defendant's machine in colliding with the hearse, unless it be that the driver, at the time of the collision was Sweeny and that defendant would not be liable for his conduct, a phase of the case we will refer to again. We will therefore pass to the important question whether the chauffeur was engaged in the line of his employment in defendant's service at the time the injury was inflicted upon plaintiff. First, we have testimony in defendant's behalf that the chauffeur had orders from him to run the machine carefully and not to allow anyone else to operate it. We will assume this to be a fact; but state the law that mere orders to the servant will not absolve the master from liability for the servant's acts. If it did, it would be a simple process for employers to rid themselves of all responsibility for the conduct of their agents. The question is not what orders did the master give as to his conduct, but whether the servant was engaged in per-

forming service for him at the time of the injury, and
this is determined, not by his orders for behavior, but
by the behaviour itself, even though contrary to
orders. [Whimster v. Holmes, 177 Mo. App. 130, 134,
135.] In that case the chauffeur, by authority of the
owner, had taken an automobile to a public garage to
be inspected and was returning home to put up the
machine when he discovered he had lost the keys to
the machine and his master's private garage; and
thinking he may have left them at the public garage,
turned back to go there and search for them. On his
way, he injured a pedestrian and we held he was prose-
cuting his employment in his master's service. We
refer to that case for the reasons and authorities sup-
porting our present conclusion that defendant's chauf-
feur was in the course of his employment, as defend-
ant's servant, when he collided with plaintiff. His
particular service was to go after defendant's son
and bring him by the church, there to await defendant's
coming from the church and then to take them home.
In going after the son he went out of his way to perform
a service for himself in collecting a debt. In the
Whimster case, at page 138, we quoted the following
from Richie v. Waller, 63 Conn. 155: "In cases of
deviation the authorities are clearly to the effect that
a mere departure by the servant from the strict course
of his duty, even for a purpose of his own, will not in
and of itself be such a departure from the master's
business as to relieve him of responsibility." And
"if the servant in going *extra viam* is really engaged
in the execution of his master's business within the
scope of his employment, it is immaterial that he
joined with this some private business or, purpose of
his own. Thus in Patten v. Rea, 2 Common Bench
(N. S.), 605, the servant started out on business of the
master, and also to see a doctor on his own account.
While on his way to see the doctor he negligently drove

against a horse and killed it, and the master was held responsible.''

There is this apt statement in an English case quoted with approval in Garetzen v. Duenckel, 50 Mo. l. c. 108: ''When a servant *quits sight* of the object for which he is employed, and, *without having in view* his master's orders, pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him.'' [Italics ours.] If we insert the word ''business'' in place of ''malice,'' we connect the statement directly with the present question. Now in this case, the chauffeur had not ''quit sight'' of defendant's business and ''without having in view,'' his orders, gone off on business of his own. He had defendant's directions in mind all the while and was executing them; only going a round-about way to do so. Certainly, when he was on his return, on his way to the Commerce Building, as he was at the time of the collision, he had his orders in view and was performing them. He was in the very act of going after defendant's son. If he was not in defendant's service then, it has not been suggested how close he should have gotten to the Commerce Building before he would have been considered in such service.

But it is insisted, that at the time of the collision, Sweeny was running the machine, the chauffeur, as we have seen, having permitted him to take charge of the steering wheel, he sitting beside him. At the trial the parties seemed to consider it was necessary to show that at the time of the collision, the chauffeur was driving. In view of the evidence we think that is a matter of no consequence or importance. When the chauffeur let Sweeny take the wheel, he remaining on the seat beside him, Sweeny's acts, practically speaking, were his, and his act in turning the wheel over to Sweeny was the act of defendant, for it was done in the defendant's service and while carrying out the chauffeur's

employment. It was not the act of a servant abandoning his master's service and turning it over to another.

In James v. Muehlebach, 34 Mo. App. 512, 518, we said that, "If a servant in charge of his master's carriage should take a stranger with him into the driver's seat, hand him the reins and tell him to drive at a run and an injury happen in consequence of the speed, the master must answer for the damage, for the negligence was that of his servant.

"But not so if the servant had quit the carriage and substituted the stranger in charge, generally, in his stead, without the knowledge of the master. For if an injury happen it is not the act of the servant for whom only is the master liable. In Booth v. Mister, 7 Carr. & P. 66, a servant in charge of his master's cart gave over the reins to one in the cart with him, an injury happening in consequence of the negligent driving, the master was made to respond.

"Lord Abinger said, 'As the defendant's servant was in the cart, I think that the reins being held by another man makes no difference. It was the same as if the servant had held them himself.' " That statement of the law is supported by Hollidge v. Duncan, 199 Mass. 121; Thyssen v. Ice Co., 134 Iowa, 749; Campbell v. Trimble, 75 Tex. 270, 272; Wellman v. Miner, 44 N. Y. Supp. 417; Bamberg v. International Ry., 103 N. Y. Supp. 297; Kilroy v. D. & H. C. Co., 121 N. Y. 22; Bk. of Cal. v. W. U. Tel Co., 52 Cal. 280, 290.

What we have said disposes of the question as to the propriety of the court's actions on the instructions refused for defendant. We think there was no error in the instance of the court's ruling on objections to the evidence; nor was there any error on the part of the court in remarks objected to as being a comment on the evidence. Nor do we think, in view of the evidence, that the verdict for $2500 was excessive.

We have not discovered any error justifying our interference and hence we affirm the judgment. All concur.