[Civ. No. 67. Fourth Appellate District.—September 18, 1930.]

D. R. BARTON et al., Respondents, v. CHARLES McDERMOTT et al., Defendants; JULIUS ANDERSON et al., Appellants.

Wright & McKee and C. M. Monroe for Appellants.

Kendall B. Perkins for Respondents.

HAINES, J., *pro tem.*—During the times here involved appellants Julius Anderson and Elmer L. Aldrich have, as copartners, conducted at San Diego, California, a laundry business under the name "San Diego Steam Laundry", and appellant Albert J. Anderson has been employed by them as their superintendent and manager. Defendant Charles McDermott was, immediately prior to and at the time of the occurrences under discussion, employed as a driver by another San Diego laundry engaged exclusively in laundering overalls. His duties were to operate a truck

between San Diego and El Centro in the Imperial Valley, to gather laundry for this latter concern and return it.

He and Albert J. Anderson had discussed, apparently on McDermott's initiative, an arrangement whereby the San Diego Steam Laundry should handle the work for the Barbara Worth Hotel at El Centro and he transport its laundry back and forth between El Centro and San Diego, for appellant's establishment, at the same time that he transported the laundry for the overall concern. Albert J. Anderson took McDermott to the Imperial Valley on Sunday, January 15, 1928, with the idea of working out this arrangement. One Conway, manager of the Barbara Worth Hotel, being that day with a party at Mexicali, on the other side of the international boundary, Anderson and McDermott drove to Calexico, parked Anderson's car there and proceeded to cross the line, where they found Conway at a resort known as the "Owl" and spent some time with him and his party. More or less drinking was going on. The evidence tends to show that they had a couple of glasses of beer apiece at lunch and another afterward. Stronger drinks were served. The evidence does not show that McDermott had, while they were together, anything stronger than beer, but does not exclude the possibility that he did have. The contract with the hotel had to be made in El Centro and McDermott claimed that his occupation required his presence in San Diego on the next morning. It was therefore arranged that he should return to San Diego and Anderson remained until the following morning to close the deal. Anderson entrusted his car to McDermott and handed him ten dollars, intending, as he says, to himself stay at Mexicali until Conway was ready to return to El Centro and ride in thither with him. McDermott thereupon drove Anderson's car to El Centro and started out thence to San Diego, but proceeded only about twenty-three miles from El Centro when he collided with an automobile wherein respondents D. R. Barton and Eva Barton, husband and wife, and their minor child, respondent Lorraine Barton, were riding. It is not disputed that the collision was due to McDermott's gross negligence without fault on respondents' part, nor that respondents were all seriously injured and damaged thereby. Neither is it disputed that at the time of the collision McDermott was drunk. Ander-

son testified that his instructions to McDermott were to leave the car in a garage at El Centro so that he might have it himself on arriving there, and to take the stage to San Diego, using the ten dollars to pay the fare. In this he is corroborated by the testimony of one Prather, who states that he was present at Mexicali and heard what Anderson said to McDermott on the subject. Anderson says that on reaching El Centro that night he made search among the garages for his car, that he rented an automobile and drove back to Calexico to find whether his car was still there, and that he could not understand the situation until he was told of the accident and that McDermott had been lodged in jail. On the other hand, one Tucker, an Imperial County deputy sheriff, testified that a day or two after the accident Anderson called at the jail to see McDermott; that he, Tucker, asked Anderson whether McDermott had stolen the car; that Anderson said "No," but stated that he and McDermott had been over to close some sort of a deal and that that afternoon he sent McDermott home with the automobile and ten dollars; that he told him to go home to be there to work the next morning, also that Anderson had said that he, Anderson, was going back on the stage.

No objection was or is made to the complaint for misjoinder of parties plaintiff. McDermott has disappeared and not been served. The case was tried without a jury and findings and judgment went for the plaintiffs, now respondents, and against the said copartners and Albert J. Anderson, all three of whom prosecute the present appeal.

Appellants contend that McDermott was not at the time of the accident their employee and that, though he were, he was not acting within the scope of his employment. Both of these propositions are disputed by the respondents, who claim, besides, that the evidence shows that Albert J. Anderson entrusted his car to one under the influence of liquor, which was negligence *per se,* independent of the doctrine of *respondeat superior.*

■ It is claimed that in the trip to the Imperial Valley the real relation between appellants on the one hand and McDermott on the other was not that of employers and employee but that they were really joint adventurers, the adventure being the effort to obtain from the Barbara

Worth Hotel a contract which would inure to the benefit of them all, that is, directly to the benefit of appellants and indirectly to that of McDermott by enabling him *then* to obtain employment from appellants. As between a joint adventure and an employment, however, the distinction drawn by appellants' counsel becomes, under the facts here involved, exceedingly tenuous. It is that, though McDermott's opportunity to profit from the venture must result, if it transpire at all, from his employment thereafter by appellants and, though his efforts, without expense to himself, were being utilized by appellants to bring about a situation profitable to appellants, which would also enable appellants to regularly employ him, still that in so using his efforts appellants were not actually employing him. For the purpose of determining whether appellants are liable for his negligence we think the situation the same as though he had made the trip to the valley as appellants' paid employee, and that he was, in effect, their employee.

The next question is whether, at the time of the accident, McDermott was still acting within the scope of the mission on which he went to the Imperial Valley, that is, within the scope of his employment. Although the car used by Albert J. Anderson was apparently his own, yet he was, beyond doubt, using it in promoting the business of appellants Julius Anderson and Elmer L. Aldrich, for whose concern he was superintendent, and he seems to have had all the powers of a general agent. For the purposes of this case, then, the car was, in legal effect, that of his principals. It is true that at the time of this collision, that is, prior to the enactment of section 1714¼ of the Civil Code in 1929 (Stats. 1929, p. 566), the mere loan by an owner of his car did not render him liable for the borrower's conduct in operating it. (*Aubel* v. *Sosso*, 72 Cal. App. 57, 62 [236 Pac. 319]; *Fahey* v. *Madden*, 56 Cal. App. 593 [206 Pac. 128]; *Hall* v. *Puente Oil Co.*, 47 Cal. App. 611 [191 Pac. 39]; *Brown* v. *Chevrolet Motor Co.*, 39 Cal. App. 738, 741 [179 Pac. 697].) However, when the relation of master and servant is established, and it also appears that the car driven by the servant belongs to the master, there arises a *prima facie* inference, sometimes even characterized as amounting to a presumption, that the servant in driving it was acting within the scope of his employment

(*Grantham* v. *Ordway*, 40 Cal. App. 758, 761 [182 Pac. 73] ; *Crain* v. *Sumida*, 59 Cal. App. 590 [211 Pac. 479] ; *Frierson* v. *Pacific Gas & E. Co.*, 55 Cal. App. 397, 398 [203 Pac. 788] ; *Fahey* v. *Madden*, 56 Cal. App. 593, 597 [206 Pac. 128] ; *Kruse* v. *White Bros.*, 81 Cal. App. 86, 95 [253 Pac. 178] ; *Wagnitz* v. *Scharetg*, 89 Cal. App. 511 [265 Pac. 318] ). ■ In the present case, therefore, the court had, from the relation shown to exist between appellants and McDermott, and the use by the latter of Anderson's car, the *prima facie* right to infer that, at the time of the accident, McDermott was engaged in the enterprise that brought him to the valley and in which appellants were, in the manner already described, concerned, and that he was still acting within the scope of his agency.

■ We have, then, to consider whether there was such a showing to the contrary as the court was bound to treat as controlling.

True it is that McDermott professed his anxiety to get back to San Diego, there to attend to other business than that of appellants. He did not, however, deviate from the direct road homeward, and we cannot say that the trial court had not the right to regard his return home as a necessary incident to the trip and therefore as much a part of the enterprise as anything else that he did. It is not a case where all that McDermott was to do was to be done at a fixed place, and the rules applicable in such circumstances do not apply here.

"An employee who has gone upon an errand on behalf of his master does not cease to be acting in the course of his employment at the moment he starts upon the return trip after having performed the errand." (*Ryan* v. *Farrell*, 208 Cal. 200, 204 [280 Pac. 945, 946].) See, also, *Brimberry* v. *Dudfield Lbr. Co.*, 183 Cal. 454 [191 Pac. 894] ; *May* v. *Farrell*, 94 Cal. App. 703, 712 [271 Pac. 789].

It is the rule also, as laid down in 1 Shearman & Redfield on Negligence, sixth edition, section 147, that:

"Where a servant is allowed by his master to combine his own business with that of the master, or even to attend to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured by his negligence; but the master will be held responsible, unless it clearly

appears that the servant could not have been directly or indirectly serving his master in the act, the negligent performance of which caused the injury.''

This language is quoted and approved in *Brimberry* v. *Dudfield Lumber Co., supra* (183 Cal., p. 462), and reiterated in substance · in *Ryan* v. *Farrell, supra* (208 Cal., p. 204). ·

There would seem, then, to be no ground for interfering with the trial court's finding that McDermott was, in what he did at the time of the accident, acting within the scope of his agency, unless the contrary result necessarily follows from what is claimed to have been his departure from his instructions in undertaking to drive Anderson's car to San Diego instead of leaving it at El Centro and taking the stage. Appellants' counsel earnestly attack the trial court's finding that McDermott was directed by Albert J. Anderson to drive the car to San Diego. They contend that Tucker's statements about what Anderson admitted at the jail are too equivocal or inconsequential to amount to substantial evidence as against the positive testimony both of Anderson and of Prather, that the former told McDermott to drive the car to El Centro and no farther. As to the effect of Tucker's testimony regarding Albert J. Anderson's admissions, we agree with them. ■ It was said in *Gardiner* v. *Holcomb*, 82 Cal. App. 342, 350 [255 Pac. 523, 526] :

''On the question of the conclusiveness of the findings of the trial court we may concede that the rule of law governing appellate procedure precludes this court from making further inquiry than to ascertain if there is any evidence of a substantial character and not inherently weak or improbable which supports the finding, and if such be disclosed the finding should stand irrespective of what evidence there might be opposed to the finding.

''However, without regard to the qualifications of the rule, but accepting it in all its strength, there is still the necessity that there be some support for the finding, and that as against the positive and direct evidence of a fact a mere conclusion ·or general statement will not serve to meet the definition of substantial or any evidence. (See *Houghton* v. *Loma Prieta Lumber Co.*, 152 Cal. 574 [14 Ann. Cas. 1159, 14 L. R. A. (N. S.) 913, 93 Pac. 377] ; 2 Cal. Jur. 918 et seq.) ''

■ The alleged admissions, if made, were oral, not written, and section 2061 of the Code of Civil Procedure directs that oral admissions of a party shall be viewed with caution. That does not mean, of course, that they may not amount to substantial evidence, but it does mean that they are subject to scrutiny to determine whether they are such. In these circumstances, Tucker's statement that Anderson said that he ''sent McDermott home with the automobile and ten dollars'', is not very persuasive, when the fact is considered that El Centro was on the way ''home'', and that no one disputes that McDermott was to take the automobile that far. Tucker, as his testimony shows, understood from Anderson that somebody was to take the stage from El Centro to San Diego. He thinks it was Anderson. Anderson says it was McDermott and if the testimony of Prather, who is apparently disinterested, is correct, it must have been McDermott. Giving credit to Tucker for entire sincerity, then, the indications that he misunderstood what Anderson said are yet too strong to be disregarded. We do not hesitate, in these circumstances, to say that the supposed admissions are too insubstantial as evidence to support the finding. (*Rodgers* v. *Burt*, 157 Ala. 91 [47 South. 226]; *Reeves* v. *Abercrombie*, 110 Ala. 535 [19 South. 41].) ■ But, besides all this, Albert J. Anderson was himself only the agent for appellants Julius Anderson and Elmer L. Aldrich, and his admissions, not as part of the *res gestae*, but in the nature of a narrative a day or two after the accident, could not bind them. (*Warden* v. *Pasadena*, 168 Cal. 612, 616 [143 Pac. 776]; *Silveira* v. *Iversen*, 128 Cal. 187, 191 [60 Pac. 687].)

■ We may add, also, that a finding by the trial court that the purpose for which McDermott was directed to return to San Diego was to prepare vehicles to begin the transportation of laundry from Imperial County to appellants' establishment at San Diego, has no other basis than Tucker's statement that Anderson admitted sending McDermott back to San Diego to go to work the next morning, which is not sufficient to sustain it. There is no evidence that McDermott had any immediate duties at San Diego other than those which he owed to the overall laundry concern. It does not appear when the proposed contract with the Barbara Worth Hotel was to take effect or

that he might not have had the opportunity to make several trips for the overall laundry between San Diego and the Imperial Valley in the meantime.

Evidently, then, if the result reached by the trial court is to be sustained, it must be in spite of the fact that in the particulars noted the findings are not sustained by the evidence. We think that it may nevertheless be sustained. The ultimate question is not whether McDermott was told to drive the car to San Diego, or whether he was to work specifically on appellants' account the next day, but rather whether his agency for appellants continued at the time of the collision, and by the sufficiency or insufficiency of the showing to sustain the court's finding on that point must the judgment stand or fall.

Whenever a point is reached where the facts established may reasonably authorize opposite inferences and the trial court has adopted one and rejected the other, its decision is as against an attack on the judgment, binding upon an appellate court, the case being in substance the same as where the court decides upon the weight of contradictory evidence. (*Ryder* v. *Bamberger*, 172 Cal. 791 [158 Pac. 753]; *MacDermot* v. *Hayes*, 175 Cal. 95, 104 [170 Pac. 616].)

Appellants' counsel, in their brief, say:

"As a matter of fact, we do not believe that the trial court predicated his (its) decision upon the theory that McDermott was instructed to take the car to San Diego."

They then quote from the reporter's transcript remarks of the trial judge in rendering his decision to the effect that since McDermott remained on his return trip in appellant's employ, even had he disregarded instructions in driving the car farther than El Centro, that would not excuse him, nor would it excuse appellants from responsibility for what he did. In disregarding, as insufficiently supported, the finding that McDermott was instructed to bring the car all the way into San Diego, we do not, of course, in any degree, base our action on what the trial judge said in his verbal opinion, for the findings, and not his remarks, are, under the law, to be looked to, to ascertain what was decided. Yet his reasoning may not for that reason be any the less cogent. We are still unable to say, as a matter of law, that there does not remain enough in the

findings supported by the evidence in the record to sustain as against appellant copartners Julius Anderson and Elmer L. Aldrich, the judgment rendered.

It may, indeed, be still argued that looking alone to the findings and disregarding the trial judge's oral opinion, it cannot be presumed with safety that the court below would have found McDermott to have been acting, at the time of the accident, within the scope of his agency had it not also found that he had been instructed to drive the car to San Diego. That consideration might require a reversal of the case if the hiatus were not otherwise cured, but, when viewed in connection with the admission in appellants' brief as to what the *ratio decidendi* of the trial court really was, we do not regard it as controlling.

 Counsel for appellants, admitting, merely for the sake of argument, that McDermott was an employee of appellants' laundry on his return to San Diego, and was, in returning, acting within the scope of his employment, yet press upon us what they claim is a distinction lost sight of by the trial court, between his returning to San Diego in the course of his employment and his driving a car to San Diego in the course of his employment, citing various cases to the point that though one is acting generally within the scope of his agency, yet when he employs an instrumentality that is not entrusted to him, or which he is forbidden to use, his employment of that falls outside the scope of his agency. Various decisions have made that distinction where, without authority, automobiles were used. (*Toadvine* v. *Sinnett,* 104 Kan. 111 [178 Pac. 401]; *Cook* v. *Mellown & Co.,* 212 Ala. 41 [101 South. 662]; *Seaboyer* v. *Davis,* 244 Mass. 122 [138 N. E. 538].) This doctrine, to the extent to which it is carried by these cases, is a reasonable one, for, though a master were willing that an employee should perform an act, he evidently ought not to be held responsible for the unnecessary use by the employee, in performing it, of an instrumentality so dangerous that he might never have willingly entrusted such employee with it at all. The weakness of this reasoning, as applied to the present case, however, is that McDermott admittedly was entrusted with the automobile, and his disregard of instructions was merely in driving it farther than he was told to drive it.

 A failure to regard instructions as to how an enter-

prise is to be carried out is not necessarily such a deviation from the enterprise as to carry what is done out of the scope of the agency. (*House* v. *Fry,* 30 Cal. App. 157 [157 Pac. 500]; *Slothower* v. *Clark,* 191 Mo. App. 105 [179 S. W. 55].) Generally speaking, the question whether a deviation from the strict course of an agent's duty is so material or substantial as to amount to a complete departure from the scope of the agency, is a question of fact.

"In some cases the deviation may be so marked, and in others so slight relatively, that the court can say that no conclusion other than that the act was or was not a departure, could reasonably be supported; while in still others the deviation may be so uncertain in extent and degree, in view of the facts and circumstances, as to make the question of what inferences should be drawn from the evidence properly one for the jury." (*Kruse* v. *White Bros.,* 81 Cal. App. 86, 93 [253 Pac. 178, 181], and cases cited.)

On what we regard as the ultimate fact that McDermott, when the collision occurred, was acting within the scope of his agency, we do not feel called upon to disturb the trial court's determination.

 Up to this point we have to some extent, for brevity, referred to appellants, including both the copartners and Albert J. Anderson, as though what applied to the partners applied also to him. It now becomes necessary to distinguish between their legal positions here. Although the point has not been raised in the briefs at all, we are unable to see on what theory Albert J. Anderson can be held to the same responsibility as the other appellants. He was superintendent of the laundry which belonged to the other appellants and their employee; but it does not appear that he had any other interest in the business than that of an employee, apparently exercising, as already suggested, power of a general agent. No question having been raised, either in the court below or here, as to the extent of his powers, and it appearing that he not only undertook to, but did, contract for the partnership, with the Barbara Worth Hotel for handling its laundry work, we think it may be safely inferred that, in behalf of the copartners, he was not only authorized to make the trip to the Imperial Valley, but also to avail himself of McDer-

mott's services in the attempt to secure the contract, from which it follows that McDermott was really an agent, or more strictly, a subagent, for the owners of the laundry, and not for him. This brings the case directly within the purview of section 2351 of the Civil Code to the effect that:

"A subagent lawfully appointed represents the principal in like manner with the original agent; and the original agent is not responsible to third persons for the acts of the subagent."

 Respondents, indeed, have, as we saw, suggested a theory on which, if their pleadings warranted it, the judgment as against Albert J. Anderson might be supported, namely, that independently of any question of McDermott's agency for him, it was negligence *per se* for him to have entrusted his car to McDermott at all, because of the latter's intoxicated condition, and that therefore he is liable for what McDermott did, apart from the doctrine of *respondeat superior*. To what extent, if at all, McDermott's intoxication may have resulted from further drinking after he left Anderson, we cannot know, but there is nothing in the pleadings to justify a recovery on this theory of negligence, and therefore it is not in issue.

As to appellants Julius Anderson and Elmer L. Aldrich the judgment is affirmed. As to appellant Albert J. Anderson it is reversed.

Cary, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 15, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 17, 1930.