[Civ. No. 11573. Second Appellate District, Division One.—December 16, 1938.]

CECILE NAUDACK, Respondent, v. MARCO CANINI et al., Defendants; SEASIDE OIL COMPANY (a Corporation), Appellant.

Leonard J. Meyberg and Paul M. Joseph for Appellant.

Louis P. Pink and J. Earl Haskins for Respondent.

YORK, P. J.—This is an action to recover damages for personal injuries sustained by respondent, who, while walking across Vine Street at its intersection with Fountain Avenue was struck by an automobile which was being oper-

ated by the defendant Canini, an employee of appellant oil company.

The action was originally brought by respondent and her husband, who were subsequently divorced, and the case continued by respondent alone, resulting in two trials in each of which the jury returned a verdict in favor of the said respondent. Defendant Canini defaulted, but upon the first trial the question of damages to be assessed against him was submitted to the jury, and after motion for judgment notwithstanding the verdict was denied, judgment was entered. for the sum of $15,000 in favor of respondent and against defendant Canini and appellant oil company. Thereafter, a new trial was granted as to appellant oil company upon the ground of insufficiency of the evidence.

Upon the second trial, which was begun a year later and after the judgment against defendant Canini had become final, appellant objected to proceeding with said trial and made two motions to dismiss, one on the ground of lack of diligence on the part of respondent in prosecuting the action after appellant's motion for new trial was granted, and the other on the ground of ''prejudice to appellant on the state of the record and the nature of appellant's liability'', both of which motions were by the court denied. Appellant's motions for directed verdict, for judgment notwithstanding the verdict and for new trial were also denied, and judgment was entered in favor of respondent and against appellant for $15,000 which is the amount of the judgment recovered in the first trial. This appeal is prosecuted by appellant oil company from the judgment entered against it in said second trial upon the following grounds:

1. The court erred in overruling appellant's objection to proceeding with the second trial and denying its motion to dismiss the action because of the state of the record and the nature of appellant's liability under the doctrine of *respondeat superior*;

2. The evidence is insufficient to sustain the implied finding that the driver of the automobile was acting as agent of appellant within the scope of his employment at the time of the collision;

3. The evidence is insufficient to sustain the finding of negligence implied in the verdict;

4. The evidence is uncontradicted that respondent was guilty of contributory negligence;

5. The court erred in giving certain instructions to the jury.

In connection with its first point, appellant contends that while it is provided by section 579 of the Code of Civil Procedure that "In an action against several defendants, the court may in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, wherever a several judgment is proper", under the rule of *respondeat superior,* a several judgment is not proper against the master. It argues in support of this theory that the judgment rendered against defendant Canini, the employee, which was based upon the verdict of the jury assessing damages against him in the amount of $15,000, together with the granting by the trial court of appellant's motion for a new trial, *ipso facto* foreclosed said appellant upon the second trial from going into the extent of the injuries and amount of respondent's damage resulting therefrom, because the same judgment must be rendered against the master and the servant when the liability of the master is based upon the doctrine of *respondeat superior.*

Over a thousand pages make up the reporter's transcript of the second trial of this action, an examination of which instantly reveals the fact that the trial court did not limit appellant in this regard, but permitted it to conduct a full inquiry as to the extent of respondent's injuries and the amount of damage which she sustained by reason thereof. Moreover, the court considered this element in its instructions to the jury, and as a matter of fact the verdict which the jury returned in the second trial was for the same amount as the verdict which was rendered in the first trial. There is no showing that appellant was prejudiced in any way by a denial of its motion to dismiss and the overruling of its objection to proceeding with the second trial, especially in view of the fact that the second trial was granted pursuant to appellant's own motion for new trial.

The following facts were developed by the evidence adduced at the trial and will be used in discussing appellant's second, third and fourth points. On Sunday evening, September 24, 1933, respondent after visiting with friends in the neighborhood walked with them to the northeast corner

of the intersection of Vine Street and Fountain Avenue in Hollywood, and stood talking to them while she waited for traffic to clear on Vine Street. At approximately 10:30 o'clock she stepped from the curbing having first looked to her right, which would be to the north, and observed the lights of machines in the distrance. She then looked to the left and observed the headlights of a machine about a block or a block and a half to the south of the intersection, whereupon she started to walk from east to west across Vine Street in the zone provided for pedestrains. When she had progressed about one-fourth of the distance across the intersection she again looked to the south and saw the lights of two automobiles approaching, the nearest of which was more than half a block to the south of the intersection. At that time she also testified that there were no cars coming from the north within a block north of the intersection. She proceeded to walk forward and when almost in the center of the street, she was struck by defendant Canini's automobile and thrown a distance of fifteen feet with such force as to cause her to turn a complete somersault in the air before she landed unconscious in the street, thereby sustaining severe and permanent injuries. The night was clear and the visibility good, and there were lights in the intersection. A man, who was riding with the driver of the first car observed by respondent approaching from the south, was an eye-witness to the collision. He testified that defendant passed the car in which said witness was riding at a point about two-thirds of a block south of the intersection at a speed of approximately 35 miles per hour; that defendant did not decrease his speed as he approached the intersection and did not alter the course of his machine until just before it struck respondent, when it swerved sharply to the left in the center of the intersection. Before he struck respondent, defendant applied his brakes with such force that he slid the wheels and skidded practically all of the way across the south half of Fountain Avenue. This witness also testified that he saw respondent look to the south, which was in his direction, as she stepped from the curb, and that she looked to the north when she reached approximately the center line of Vine Street just before the collision.

As to the status of the defendant Canini, it appears that he was employed as advertising manager for appellant Sea-

side Oil Company about January 1, 1933, and continued in its employe for the entire year of 1933, his office being furnished to him at the company's plant at Summerland, although he resided at Santa Barbara. Owing to the fact that appellant Seaside Oil Company operated its Summerland plant on a five-day week basis, it was closed on Saturday and Sunday except for a skeleton force then on duty. However, defendant testified that he worked Sunday, Saturday, nights and any number of hours that were necessary in order to complete the work and "to do his job satisfactorily". No bulletins were issued by the company nor rules established fixing definite hours of employment, and defendant had many conferences with Winslow Bushnell, sales manager of appellant, relating to company business after regular working hours. Except for one week-end during each month, defendant spent Saturday and Sunday of each week visiting in Los Angeles. At the time of his employment, it was agreed between him and appellant that he should purchase an automobile, as part of his duties required him to attend to company business away from its office in Summerland, and it was also agreed that he should be reimbursed for the use of said automobile during such times as defendant used it for the business of the company. He was not very careful about making charges for the use of this automobile, and on many occasions either failed or forgot to make charges to which he was entitled. He covered the territory from Ventura to San Jose, and upon occasions attended to company business in Los Angeles, Colton and San Bernardino.

In August and during the early part of September, 1933, appellant oil company decided to place a new gasoline on the market which was to be known as "Silver Gull", a name conceived by defendant. During September, defendant prepared a prospectus and an analysis of a general scheme for advertising and merchandising this new product and delivered it to Mr. Winslow Bushnell, said sales manager. Defendant had various other advertising data, books and pamphlets which he wished to study with a view to perfecting his analysis, which were located at an address where he stopped when in Los Angeles. On Friday, September 22, 1933, defendant left his office in Summerland to make his customary week-end trip to Los Angeles, for the avowed

purpose, as he testified, "to do the various things I have spoken of heretofore—that is to get the information I wanted from Foster & Kleiser—to go through these papers and books of mine, and to see Twomey Company", and that none of these objects was for himself personally, but all in connection with the advertising campaign of Silver Gull gasoline for the benefit of appellant company. On Saturday morning, September 23, 1933, defendant called at the office of Foster & Kleiser in Los Angeles, found it closed, and then went to call upon E. F. Twomey, and had a long conference with him about "ridge signs" and other advertising material for appellant. In connection with this call, Mr. Twomey testified that defendant had visited him at his office in Los Angeles on the Saturday morning in question, and that although he did not remember just what was discussed, he thought it was regarding Seaside business and probably was regarding Seaside ridge signs—a large sign which could be placed on the ridge of the roof of an oil station distributing Seaside gasoline. On cross-examination of this witness, it was brought out that some time previous to this date defendant had submitted to said E. F. Twomey an invention for an advertising display sign which he wished Mr. Twomey to manufacture and sell for him on a royalty basis, the implication being that the Saturday morning conference was with regard to this display sign rather than the ridge signs. There was also evidence to the effect that the ridge signs had been ordered only once during the year that defendant was in the employ of the appellant oil company, to wit, on September 12, 1933, from Smith-Martin Company, advertising specialists in Los Angeles, and that defendant was aware of this fact.

It was shown that on both Saturday and Sunday defendant Canini spent a great deal of time going over his advertising data, books and material at his room at 922 So. Kingsley Drive, Los Angeles; that he called upon his fiancee both Saturday and Sunday evenings, and that on Sunday night, September 24, 1933, around 9 o'clock he took his brief case and advertising data, including the company's prospectus for the new Silver Gull gas campaign and departed from his room on Kingsley Drive, preparatory to starting his drive to his office at Summerland. Owing to the fact that he had ascertained that a fog was blowing in over the coast route, he changed his course from that to the inland route via Ventura

Boulevard, and in so doing he drove his automobile north on Vine Street, where in crossing Fountain Avenue he collided with and severely injured the respondent, under the circumstances hereinbefore set forth. After the accident he left respondent at the receiving hospital in Hollywood and continued in his automobile to the appellant company's plant at Summerland, where he stopped and deposited his brief case, advertising data, memoranda and prospectus, looked over his desk for mail and possible instructions regarding work for the ensuing day, and then proceeded to his hotel at Santa Barbara.

There was evidence introduced to the effect that when defendant was expected to work on Saturday or Sunday, or was to leave Summerland on business for the company, excepting to go to Santa Barbara, he was to obtain instructions or permission from either Winslow Bushnell, sales manager, or J. F. Bushnell, general manager of appellant oil company, before undertaking to do such work or before leaving Summerland. It was also shown that defendant had an arrangement in writing with appellant whereby on Saturday mornings while in Los Angeles on his own private business, he would make calls upon firms there who supplied advertising materials to the appellant, and that when such calls were required, he would charge the company 7¢ per mile for the use of his car from his room in Los Angeles to such places of business, as well as the expense of parking and telephoning in connection with such calls. Several definite written memorandums of this arrangement appear in evidence in defendant's own handwriting, commencing with calls made by him in January, 1933, immediately after he went to work for appellant, and continuing throughout the year. No memorandum of expense was introduced in evidence covering the particular week-end here in question.

It was also shown that on September 16, 1933, defendant had tendered a written resignation to Winslow Bushnell, who had asked defendant to reconsider his action, and a few days before the accident occurred, defendant had assured said Bushnell that he would continue his employment with the said company until a successor could be found and trained. In the middle of December, 1933, such successor was employed, and after acquainting him with the work to be done, defendant severed his connection with appellant company on Decem-

ber 31, 1933. Defendant did not report the accident to appellant until after he was served in the instant action which was begun on April 9, 1934.

Under the facts and circumstances presented by the record, it was a question of fact for the jury to determine whether or not defendant Canini was acting within the scope of his employment at the time the accident occurred. The evidence upon this issue is in direct conflict, the officers of appellant corporation testifying that said defendant was not engaged in company business during his week-end trips to Los Angeles, while defendant testified that on the particular week-end in question he was directly engaged in working out the details of the campaign to introduce appellant's new product "Silver Gull" gasoline to the motoring public. Defendant admitted that he spent the evening of Saturday and also of Sunday with his fiancee, but testified he was on his way back to his office at Summerland when the accident occurred, and that later that night he actually stopped there leaving his brief case and other data concerning the said campaign.

"It is the established rule in this jurisdiction that where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured; but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master." (*Ryan* v. *Farrell,* 208 Cal. 200, 204 [280 Pac. 945] , citing *Brimberry* v. *Dudfield Lumber Co.,* 183 Cal. 454 [191 Pac. 894] ; *Kruse* v. *White Bros.,* 81 Cal. App. 86 [253 Pac. 178] ; *May* v. *Farrell,* 94 Cal. App. 703 [271 Pac. 789] ; *Dennis* v. *Miller Automobile Co.,* 73 Cal. App. 293 [238 Pac. 739].)

Again in *Barton* v. *McDermott,* 108 Cal. App. 372, 384 [291 Pac. 591], it is stated: "Generally speaking, the question whether a deviation from the strict course of an agent's duty is so material or substantial as to amount to a complete departure from the scope of the agency, is a question of fact." It therefore appears that the jury having found in favor of respondent and against appellant in both trials, this court is bound thereby.

With respect to appellant's third point that the evidence is insufficient to sustain the implied finding of defend-

ant's negligence, the summary of facts hereinbefore set forth reveals that defendant was operating his automobile at a speed of 35 miles as he approached the intersection and ·that he failed to see respondent until he struck her. Another witness, who was riding in the machine which defendant passed somewhere in the block south of the intersection in question, testified that he saw respondent when she stepped from the curb, saw her look in his direction at that time and again when she was part way across the intersection.

A conclusion that defendant ought to have seen respondent in time to avoid striking her may be derived from the circumstance that other persons saw her at a distance which would have been sufficient to enable defendant to prevent the calamity. (2 Cal. Jur. Supp. 369.) In the circumstances, the conclusion is irresistible that defendant failed to maintain a proper lookout for pedestrians. The evidence is amply sufficient to sustain the implied finding that defendant negligently operated his machine at the time and place in question.

As to the question of contributory negligence of respondent, it appears that under the more recent decisions of the courts of this state that question must be deemed to be one of fact for the determination of the jury. "It cannot be said that a person is guilty of contributory negligence merely because he attempts to cross a street when an automobile is approaching. If that were so he never could attempt to cross a street upon which automobiles are being operated, and consequently where there is almost always an approaching machine. He has a right to expect that those operating automobiles upon a public street will operate them in the manner and at the speed customary at the particular place. Whether such a person is guilty of contributory negligence in attempting to cross a street in front of an approaching automobile would depend upon all the circumstances under which he acted. This question is one for the determination of the jury or the trial court and their finding thereon is binding upon an appellate court. (*Scott* v. *San Bernardino Valley, etc.*, 152 Cal. 604 [93 Pac. 677] ; *Clark* v. *Bennett*, 123 Cal. 275, 277 [55 Pac. 908] ; *Schneider* v. *Market Street Ry. Co.*, 134 Cal. 482, 488 [66 Pac. 734].)" *Flach* v. *Fikes*, 204 Cal. 329, 332 [267 Pac. 1079].

Appellant finally contends that the court erroneously gave certain instructions to the jury. A careful reading of all the instructions given by the trial court discloses that the jury was fully and fairly directed and informed as to the law involved in the issues presented to it, and that no prejudicial error resulted therefrom so far as this appellant is concerned.

The judgment appealed from is affirmed.

Doran, J., and White, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 10, 1939.