UNITED STATES ex rel. Jim LEONG,
Petitioner,

v.

J. L. O'ROURKE, Acting Officer in Charge
Kansas City Division of the Immigra-
tion and Naturalization Service, United
States Department of Justice, Respond-
ent.

No. 9120.

United States District Court
W. D. Missouri, Western Division.

Sept. 7, 1954.

———◆———

Maurice E. Benson and Otto Schmid,
Kansas City, Mo., for petitioner.

Edward L. Scheufler, U. S. Atty., Kan-
sas City, Mo., William O. Russell, Asst.
U. S. Atty., Joplin, Mo., for respondent.

RIDGE, District Judge.

Petitioner, being held under a warrant for his deportation as an alien, seeks release therefrom on a claim of United States citizenship.

■ A single issue of fact is presented in the instant habeas corpus proceeding, namely, "Is petitioner a citizen and national of China, and, therefore, an alien subject to deportation; or is he a citizen of the United States by birth?" If, as contended by respondent, petitioner is an alien the instant proceeding must be dismissed, as the Immigration and Naturalization Service has administratively determined that, as an alien, petitioner illegally entered the United States on April 7, 1947 in that he did not then present a valid visa, re-entry permit, or border-crossing card as required by the Act of June 28, 1940, 54 Stat. 673,[1] and because of false and misleading statements as to his citizenship he entered the country without the required inspection in violation of the Act of February 5, 1917, 39 Stat. 874.[2] This administrative determination is final and conclusive upon this Court if petitioner is, in fact, an alien. However, making what we consider a substantial claim to United States citizenship, petitioner is entitled in the instant proceedings to a trial *de novo* on the question of his citizenship. N g Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938; Carmichael v. Delaney, 9 Cir., 170 F.2d 239; Lee Fong Fook v. Wixon, 9 Cir., 170 F.2d 245, certiorari denied, 336 U.S. 914, 69 S.Ct. 604, 93 L.Ed. 1077.

■■ The factual issue here involved can be resolved by the consideration of whether the Government has sustained the burden, cast upon it by law, of producing substantial evidence in proof of the fact that petitioner is an alien and not a citizen of the United States. When a substantial claim of citizenship is made by a deportee, the burden is on the Government to prove that the deportee is an alien before he can be deported. Bilo-

kumsky v. Tod, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221; Brewster v. Villa, 5 Cir., 90 F.2d 853; United States, ex rel. Bishop v. Watkins, 2 Cir., 159 F.2d 505, certiorari denied, 331 U.S. 839, 67 S.Ct. 1509, 91 L.Ed. 1851; United States, ex rel. Rongetti v. Neelly, 7 Cir., 207 F.2d 281; United States, ex rel. Giglio v. Neelly, 7 Cir., 208 F.2d 337. Cf. N g Fung Ho v. White, supra. Evidence to sustain the burden of proof so cast upon the Government in a deportation case should be reasonable, clear, and substantial. Cf. U. S. ex rel. Marcello v. Ahrens, 5 Cir., 212 F.2d 830; Whitfield v. Hanges, 8 Cir., 222 F. 745; In re Giacobbi, D. C., 32 F.Supp. 508; Ex parte Delaney, D.C., 72 F.Supp. 312, affirmed, Carmichael v. Delaney, 9 Cir., 170 F.2d 239.

To establish that petitioner is an alien the Government wholly relies upon a single statement given by him to one of its investigators in 1949, wherein petitioner made certain admissions against his interest in saying that he was born in China. No other witness (not even the investigator who took the statement) nor any documentary evidence was adduced by respondent relating to that or any other matter here involved. Hence it appears that if we are to resolve the issue of alienage or citizenship here made it must be done by a consideration of the circumstances surrounding the making of that single admission against interest charged to petitioner, and the weight to be given thereto, measured in the light of the evidence now adduced by petitioner as to his birth in the United States. When so considered the following facts must be duly appreciated.

There can be no question but that petitioner has continuously resided in the United States at least since 1910, when he was four years of age, except for a period between February 3, 1947 and April 7, 1947 when he and his American-born wife took a delayed honeymoon trip to China. Petitioner claims he was born in San Francisco, California, on October 10, 1907. He asserts such claim because,

1. Now 8 U.S.C.A. § 1182(a) (20).

2. Now 8 U.S.C.A. § 1101 et seq.

although he has no personal recollection of his parents, he recalls going from San Francisco to St. Louis, Missouri, at an early age with his uncle, one Suey Leong, and that in 1932, after the death of his uncle, one Lee Lum Kee, who was then returning to China, gave him an affidavit in which Kee stated that he was well acquainted with the parents of petitioner and that:

"He had visited at their home in San Francisco many times before and after the birth of Leong Jim (petitioner); and that he saw said Leong Jim in his parents' home in San Francisco at frequent intervals after his birth, up until the return of his parents to China, at which time Leong Jim was a boy about twelve (12) years of age; that before the return of his parents to China they made arrangements with the deponent to leave the said Leong Jim in deponent's charge and custody; and deponent states "that said Leong Jim remained and lived with him and under his control until he reached the age of approximately twenty-one years, and that since said time deponent has seen Leong Jim at frequent intervals.

"Deponent state(d) that Leong Jim, whose affidavit preceded and whose photograph is attached thereto, is the same person who was born to Leong Sai Leong and Lum Shee in San Francisco in October 1904."

It is petitioner's testimony before the Court that after the death of his uncle in 1923 Lee Lum Kee, who lived in the same house as his uncle for ten or fifteen years, gave him the above affidavit and told him to keep it. He kept the affidavit but never used it for any purpose until he applied for his passport in 1947. Respondent claims that said affidavit is and was false and known to be so by petitioner at the time he used it to secure the passport issued to him and his wife and that it is wholly insufficient to support the claim of citizenship made by petitioner.

After the death of his uncle petitioner established a laundry in St. Louis, Missouri, which he operated until he moved to Evansville, Indiana. As a citizen he registered for the draft at Evansville in 1942, and sold his business upon being called for induction. When rejected for military service because of physical defects he went to Decatur, Illinois, then back to St. Louis for a short time, and finally to Kansas City, where he again established his own laundry. In 1946 he married a native-born citizen of the United States, the mother of two children. Since that time he and his family have continuously resided in Kansas City.

On November 14, 1946, petitioner and his wife applied for a passport to visit China. With his application petitioner, in support of his claim to citizenship, submitted an affidavit executed by himself and that of Lee Lum Kee. On the strength of such affidavits and a copy of the certificate of birth of his native-born wife a passport was issued to the couple as United States citizens. They left the United States on February 3, 1947 and returned on April 7, 1947. Petitioner was re-admitted into the country upon the strength of the above passport without any of the identification and inspection procedures required of aliens.

On July 14, 1949 petitioner was called before Investigator Thomas P. McDermott of the United States Immigration and Naturalization Service. Neither the cause nor the circumstances occasioning this summons are revealed in the record. Petitioner was informed by the Investigator that he desired to take a statement from petitioner concerning his right to be and remain in the United States and that any statement petitioner would make with respect thereto could be used against him either in criminal or deportation proceedings, or both. The only persons present at the taking of said statement were petitioner, his wife, Investigator McDermott, and a stenographer who transcribed the statement in question and answer form. From this transcript it appears that petitioner,

logically, intelligently, and in proper syntax, made certain admissions against his interest. (It should be here noted that petitioner when testifying in his own behalf before the Court expressed himself ungrammatically, in more or less "pidgin" English.)

In the statement given to Investigator McDermott it is revealed that petitioner had previously been interrogated on January 21, 1949 and had made certain statements to McDermott at that time. Petitioner was asked if all the statements which he made at such prior interrogation were true and correct; he replied that they were not. He was then asked to point out "in your own words" that part of the prior statement which was not true. His recorded reply was that his prior statement that Lee Lum Kee had been present at his birth in San Francisco was not true, that Kee had not been so present. He was then asked why, if that part of his January 21 statement was not correct, did Lee Lum Kee execute the affidavit in which he had stated that he had been present at petitioner's birth. In explanation petitioner stated that Lee Lum Kee was a good friend of his uncle and "I guess the two of them got together and decided to make the affidavit." He was next asked how he knew that Kee was not present at San Francisco at his birth. In reply he is shown to have stated, "Because I was born in Canton, China, Ho Boc District, on October 10, 1906." When asked why he had told Investigator McDermott on January 21, 1949 that he was born in San Francisco on October 10, 1904, petitioner stated that he had done so because when Lee Lum Kee gave him the affidavit he told him to "stick to the story" given in the affidavit. In being questioned as to the circumstances under which he had secured the United States passport to visit China, petitioner stated that at the time of securing such document he had not known that he was born in China, but believed that he was born in San Francisco. He stated that he had not known that he was born in Canton, China until during his 1947 visit to China, when he met an old man who told him that he had known petitioner when he had lived in China as a very small boy; that not until he had talked to this old man and some other people did he learn that he was born in China. He further stated that his mother and father had lived in San Francisco previous to his birth but had returned to China where he was born in Canton on October 10, 1906; that both of his parents had died when he was about four years old; that his uncle, Suey Leong, brought him from China to the United States in 1910; that they had entered the United States at the Port of San Francisco; that they lived in San Francisco for six or seven years; and that they then moved to St. Louis where he resided with his uncle until the latter died. He was then asked, "If you did not know for certain that you were born in China until you returned there in 1947, how did you know that your uncle brought you to the United States when you were about four years old?" Petitioner replied, "Because Lee Lum Kee had told me that I was born in San Francisco in 1904, and that my parents had taken me back to China when I was a baby and that my parents had died in China, and that my uncle, Suey Leong, had brought me back to the United States; but I knew that Lee Lum Kee was not in San Francisco when I was supposed to have been born there, as the first person I remember living with was my uncle, Suey Leong; and that is why I know that he is the one who brought me from China." He was then asked whether he realized that the statement that petitioner had been born in San Francisco in the affidavit that Lee Lum Kee had given him was false. He explained that he had not been absolutely sure about the facts in the affidavit and that it was not until he made his trip to China and talked with the old man and some other people that "I knew I was born in China." When asked why Lee Lum Kee had made the false affidavit, he explained that he thought he had done so because his uncle, Suey Long, had told Lee Lum Kee that petitioner was born

in San Francisco, and Lee Lum Kee, not knowing any differently and thinking to help petitioner, had then made the affidavit. He was then asked the specific question: "Did Lee Lum Kee know where you were born?" Answer: "I don't think he did."

As a consequence of the statement so made to investigator McDermott on January 14, 1949, a warrant for the arrest of petitioner as an alien was issued, charging him with illegal entry into the United States on April 7, 1947, the date of his return from China. On April 14, 1953 a hearing was had as to the deportability of petitioner. The only evidence received at such hearing was that of petitioner, mainly in identification of a copy of the statement given to Inspector McDermott. Notwithstanding the contents of such statement, petitioner at this hearing reasserted his birth in San Francisco on October 10, 1907. When asked to comment on the contradiction between his then claim and the 1949 statement regarding his birth in China, petitioner said, "The man (meaning Investigator McDermott) asked me three times, 'you were born in China', he wanted me to say I was born in China, so I say I was born in China, but I thought I was born in San Francisco." Petitioner further stated at that hearing that he did not know for sure whether Lee Lum Kee was present at his birth or not and that the only evidence which he then had regarding his birth was the affidavit given him by Lee Lum Kee. He there asserted that he was relying on that affidavit and the statements made to him by Lee Lum Kee and his uncle, who had told him that he was born in San Francisco.

Following this hearing the Special Inquiry Officer recommended that petitioner be deported as an alien for the reasons stated in his warrant of arrest. Such recommendation was sustained by the Board of Immigration Appeals. The Special Inquiry Officer and the Board rationalized that in petitioner's sworn statement of July 14, 1949, "he clearly and unequivocally admitted that he was born in Canton, China, Ho Boc District, on October 10, 1906," that, "in that statement (petitioner) clearly explained the discrepancies of prior allegations, which he is now again endeavoring to establish. (That) (t)he clarity of his statements on July 14, 1949 render his present testimony incredible. (T)herefore (they) held that he is a native and citizen of China." In other words, the solitary evidence upon which the order of the Immigration and Naturalization Service for the deportation of petitioner depends is the disbelief of petitioner's claim to birth in San Francisco and the acceptance of his admission against interest that his birth was in China; holding such admission to be conclusive and substantive evidence of petitioner's alienage, they found him to be deportable under the charge contained in the warrant of arrest.

As above stated, if petitioner is an alien we are not called upon to determine in the instant case whether the evidence so considered by the Immigration and Naturalization Service was sufficient to support the order of deportation. The issue before us is whether the facts above stated, standing alone, are sufficient to sustain the burden of proof cast upon the Government in this proceeding; a burden to establish that petitioner is an alien, and not a citizen of the United States as he here claims.

It is a rule of evidence that inconsistencies and incongruities in the testimony of a witness where general character for veracity has not been attacked should be reconciled where possible, especially where there is no extrinsic evidence adduced for suspecting deliberate error or fraud on the part of the witness. Cf. The Seeandbee, 6 Cir., 102 F.2d 577. It is also the law that where the triers of the facts cannot reconcile errors and inconsistencies in the testimony of a witness they may accept that part of his testimony which they believe worthy of credit and reject the balance, having regard to all of the facts and circumstances tending to show the witness's credibility or want thereof, cf. Look v. French, 346 Mo. 972, 144

S.W.2d 128, and that an admission against interest may, in the absence of opposing evidence or in the light of surrounding circumstances, be sufficient to establish the fact admitted. J. E. Riley Investment Co. v. Sakow, 9 Cir., 98 F.2d 8; South Carolina Asparagus Growers Ass'n v. Southern R. Co., 4 Cir., 64 F.2d 419. But we find no authority which holds, as contended by respondent, that an admission against interest is conclusive of the fact admitted under all conditions. On the contrary, it is held that other evidence in a case may render an admission against interest wholly insufficient to establish the fact for which it was offered in evidence. Skene v. Marinello Co., 50 App.D.C. 265, 270 F. 701; Barton v. McDermott, 108 Cal.App. 372, 291 P. 591. Whether an admission against interest should be held conclusive depends on the facts and circumstances surrounding the making thereof and facts which are revealed as being its premise. If it is revealed that the admission is premised in hearsay, received by the party making it, and that there are other probative facts which show the premise to be doubtful or untrue, then a reasonable man would not, we think, consider the admission serious enough to warrant reliance thereon as substantive evidence of the fact as to which it is offered. Cf. Wong Kam Chong v. United States, 9 Cir., 111 F.2d 707, 711.

Petitioner was a witness in his own behalf. In light of the discrepancies in his testimony before the Immigration and Naturalization Service as to the country of his birth we may eliminate his testimony in that respect. However, his testimony before this Court and the Immigration Service reveals certain facts that are not without importance in weighing the testimony of witnesses other than petitioner, namely, that the admission against interest upon which the respondent relies to establish alienage is premised in hearsay and the probative force thereof must be guarded, because the circumstances surrounding the conversation petitioner had in China with the "old man" and "other people" is not revealed. Petitioner has never been asked to state verbatim what was then told him, to identify the parties, or their relation to the Leong family. All petitioner did was give his conclusion from a conversation the substance of which is not before this Court. Notwithstanding that expressed conclusion, he has contended throughout, and stated at the time he made the admission against interest, that he still thought he was born in San Francisco, because of other hearsay evidence received by him from members of the Leong family residing in the United States. Although petitioner's position as to the country of his birth has been vacillating, the position so taken by him was not constructed on any matter or thing concerning which it can be conclusively presumed that petitioner had personal knowledge.

In the hearing before this Court petitioner produced as a witness one Dan Leong, sixty-three years of age, who testified that he was a cousin of petitioner and had resided in the United States since 1906; that when he (Dan Leong) landed at San Francisco, he met petitioner's father and mother and visited in their home, they then had no children; that petitioner was born to the parents he claims in San Francisco in 1907; and that he saw petitioner in his parents' home in that City three days after his birth. His further testimony is that he later saw petitioner in St. Louis, Missouri, when petitioner's uncle first brought him there and that he saw him regularly in that City for the next twenty years. This witness was not subjected to any cross-examination nor is his testimony impeached by any other probative evidence before this Court. Consequently, the true premise of the admission against interest charged to petitioner and relied upon by respondent as substantive evidence of petitioner's alienage is cast in some doubt. Therefore, standing alone, its probative value is not of such character as to constitute conclusive proof of the fact for which it is offered, nor sufficient to sustain the

burden of proof cast upon the respondent in this case. We are led to such conclusion, not only because of the uncontradicted testimony of Dan Leong, but also because of the lack of evidence which we think could have been adduced by respondent, namely, evidence that petitioner entered this country in 1910 in the company of his uncle. If petitioner entered this country in 1910, as respondent assumes, it would appear that the Immigration and Naturalization Service would have some documentary evidence to support its theory of petitioner's alienage. Furthermore, in view of respondent's sole reliance upon the forthright and voluntary revelation by petitioner to Inspector McDermott of what he had learned about his birth, and his dubious conclusion therefrom, we do not believe that such statement has the probative effect it should have to sustain the Government's burden without the testimony of Inspector McDermott as to what led up to the making of the statement and the circumstances surrounding it; especially, since petitioner now testifies that that statement was not true, and produces a relative to prove that fact and his correct citizenship.

In the case at bar, respondent apparently assumes that, because doubtful probity has been cast upon the affidavit of Lee Lum Kee, by reason of petitioner's contradictory statements relating thereto, all of petitioner's evidence as to his claimed birth in the United States is to be disbelieved and that, therefore, he is to be held an alien. The Chinese Exclusion Act has been repealed. The burden is no longer on those of Chinese extraction to prove their right to be and remain in this country. Though he had no evidence as to his birth, because petitioner is and has been a resident of the United States for over forty years the burden is on respondent to prove him an alien subject to deportation. The presumption is that petitioner is a citizen, nothing substantial to the contrary appearing. Cf. 14 C.J.S., Citizens, § 18, p. 1150; Ex parte Delaney, D.C., 72 F.Supp. 312. The burden cast upon respondent in this action cannot be met by merely saying, "Petitioner cannot prove he is a citizen; therefore, he must be an alien" as here attempted.

Petitioner is ordered discharged from the custody of respondent and freed from the mandate of the warrant of arrest (Exhibit A). It is so ordered.