[Civ. No. 10913.   First Appellate District, Division Two.—May 1, 1939.]

JOHN TSIRLIS, Respondent, v. STANDARD OIL COMPANY OF CALIFORNIA (a Corporation), Appellant.

Cooley, Crowley & Supple for Appellant.

James F. Brennan, George L. Lang and Saul Perlis for Respondent.

SPENCE, J.—Plaintiff sought damages for personal injuries sustained when a Ford automobile of the defendant company collided with the automobile of plaintiff. Upon a trial by jury, plaintiff had judgment and from said judgment, defendant appeals.

The accident occurred at about 5 o'clock on the morning of August 1, 1937, on the main highway between Sausalito and Richardson's Bay bridge. Plaintiff was driving in a general northerly direction and defendant's automobile was being driven in a general southerly direction on said highway. It appears unnecessary to set forth all the facts concerning the happening of the accident. We so state as defendant apparently concedes that the accident occurred by reason of

negligence in the operation of defendant's automobile and without any negligence on the part of plaintiff. Nor does it appear necessary to describe the injuries sustained by plaintiff as it is not claimed that the judgment is excessive. We need only state here that plaintiff sustained serious injuries and that Mr. Mahoney, the employee of the defendant company, died immediately as a result of the injuries which he sustained.

The main contention of defendant on this appeal is that Mr. Mahoney was not acting within the scope of his employment at the time of the accident. Other points raised by defendant are that the trial court committed prejudicial error in admitting certain evidence over defendant's objection and in giving and refusing certain instructions. Before proceeding to the discussion of the main contention, we will first dispose of certain other points raised.

▉ The trial court gave certain instructions in which the automobile of defendant was referred to as the automobile operated by Mr. Mahoney. Defendant contends that there was a conflict in the evidence as to who was driving defendant's automobile and that the giving of said instructions therefore constituted prejudicial error. We find no merit in this contention, as the evidence showed that Mr. Mahoney was driving said automobile and there was no substantial evidence to the contrary. Mr. Mahoney was accompanied on the trip by Mr. Brooks, a friend of Mr. Mahoney. They left Guerneville at about 3 o'clock in the morning. They took defendant's car from the garage and left Mr. Brooks' car there. The direct evidence showed that Mr. Mahoney was driving the defendant's car when these men left Guerneville; that they did not stop at any time between the time of their departure and the time of the accident; and that Mr. Mahoney was driving when the accident occurred. After the accident, the men were removed from defendant's car by Sergeant Norich and others. The testimony showed that Mr. Mahoney was a large man while Mr. Brooks was a small man. As a result of the collision, the steering wheel "was pushed forward to the windshield". Mr. Mahoney "died as a result of the fracture of the 4th and 5th ribs on the left side, and a rupture of the lower part of the liver about three inches long". These injuries were occasioned "by direct force" and "a very severe blow". He "could not have hit the dash-

board with the edge of his liver'' as the interior of a Ford coupe ''is such that it would be almost impossible for a man to strike the dashboard with his trunk''. When Sergeant Norich arrived, both men were slumped on the floor of the car with Mr. Mahoney on the bottom and Mr. Brooks partly on top of him. Mr. Mahoney's feet were on the left side, or driver's side of the car, and Mr. Brooks' feet were on the right side of the car. Mr. Mahoney's head was on the right side and Mr. Brooks' head was on the left side. Mr. Brooks was removed first as he was ''on top''. Sergeant Norich testified on the trial that he was not sure which side of the car either man was removed from. During the trial, the entire testimony of Sergeant Norich, given in another proceeding, was admitted in evidence. At one point in that proceeding, certain leading questions were propounded to the witness and he replied in the affirmative indicating that Mr. Brooks was taken out of the left side of the car and that Mr. Mahoney was taken out of the right side of the car.

The parties are not agreed on the question of whether the testimony on the former proceeding was admitted for all purposes or solely for the purpose of impeachment. We believe this to be immaterial. The only claimed conflict in the testimony of the witness is that he testified on the first occasion that Mr. Mahoney had been taken from the right side and Mr. Brooks from the left side of the car, while on the second occasion, he testified that he was not sure on this point. There is no conflict whatever in the testimony regarding the position of the feet and bodies of the two men nor in the testimony regarding the damage to the steering wheel and the injuries to Mr. Mahoney. All of the testimony shows that it was entirely probable that the men were removed from the car from the sides indicated by the witness on the first occasion but under the circumstances, that fact, if it be a fact, would not create a substantial conflict with all the other evidence, direct and indirect, which showed that Mr. Mahoney was driving defendant's automobile at the time. We therefore conclude that there was no prejudicial error in the giving of said instructions referring to the automobile of defendant as the automobile operated by Mr. Mahoney.

The consideration of the remaining contentions of defendant requires some further statement of the facts disclosed by the evidence. Mr. Mahoney had been an employee of

the defendant company for approximately 25 years. His position at the time was that of Flamo salesman and inspector. His home was in San Francisco and his regular place of employment was in that city. On May 17, 1937, he was temporarily assigned to what was known as the Guerneville area for the purpose of selling, inspecting and servicing Flamo equipment in that area. He was given a company car for transportation, was given a $50 advance for expense money, and was allowed an expense account for hotel bills, meals, garage hire, bridge tolls and the like. Mr. Shannon was the immediate superior of Mr. Mahoney and of all Flamo salesmen. He testified ''that in Mahoney's case this was a special temporary assignment and his home was not moved''.

Mr. Mahoney's duties were not specified in writing and the testimony regarding those duties is not as definite as it might be. A reading of the testimony on this subject leads to the conclusion that Mr. Mahoney's duties were what may be termed field duties rather than office duties; that he was allowed a large amount of discretion in determining the time and manner of handling his work; that he did not work under the constant supervision of any other person; and that his employment was quite irregular as to the days and hours that he worked. Defendant introduced evidence by which it sought to show that Mr. Mahoney's duties were confined to fixed hours in a fixed area but that testimony fell far short of showing a situation similar to that involved in those cases where all of the employee's duties were strictly limited to those performed during fixed hours at a fixed place. In fact, the testimony tends to show that his duties were not confined to fixed hours, fixed days or fixed places. His duties were described by Mr. Shannon as follows: ''Well, his duties were the inspection of Flamo installations, those inspections which cover both certain regular inspections that are performed at the option of the Standard Oil Company, particularly in cases where our fuel is installed or our Flamo is installed in connection with public places, also to answer any requests for service that might come from a customer, and to take care of any sales problem or sales solicitation in the Guerneville field.'' He further testified that Mr. Mahoney was paid by the month; that he was on a forty-hour week with two days off in each week; that he reported at the area station in Guerneville each morning; that ''the normal time for reporting would be eight or eight-thirty in the morning'';

and that Mr. Mahoney reported in later, "about 9:30", on the mornings when he came from San Francisco. The witness had no knowledge, however, of the actual time of reporting as he was not there and he saw Mr. Mahoney only about once a week. It appears that Mr. Mahoney had authority to answer calls at any time and did actually perform his work at irregular hours. The nature of his work was such that most of his duties in selling, inspecting and servicing was done on the premises of the customers or prospective customers at times which suited their needs and convenience rather than on the premises of his employer during fixed hours. It further appears that Mr. Mahoney could determine which days' of the week he would take off, but as the week-ends were the busiest times for him in that area, he would never take off both Saturday and Sunday. At times, he worked both Saturday and Sunday and took his two days off in the middle of the week.

After his assignment to the Guerneville area, Mr. Mahoney left San Francisco each week for that area and remained there until he returned to his home in San Francisco for his two-day weekly layoff. He kept at his home a box of various parts used by him in servicing the Flamo equipment and he took some of these parts with him at times on his trips back to Guerneville. Later, he decided to take his family temporarily to the Guerneville area and they were living in a rented house in that area at the time that the accident occurred. Mr. Shannon was advised of this move, but Mr. Mahoney still maintained his home in San Francisco and was permitted to enter all of the usual charges in his expense account in the same manner as he had entered them while his family remained in San Francisco. In all cases, both before and after moving his family, the expenses of the trips to and from Guerneville, including bridge tolls, were entered and paid by the defendant, but not his living expenses while in San Francisco.

Mr. Sullivan, another employee of the defendant company, having duties similar to those of Mr. Mahoney in an adjoining area, was leaving on his vacation trip on the week-end when the accident occurred. In 1936, Mr. Mahoney had taken over all of Mr. Sullivan's territory while Mr. Sullivan was on his vacation and Mr. Mahoney had been directed to take over a portion of Mr. Sullivan's territory while Mr.

Sullivan was on his vacation in 1937. We now come to the testimony which was admitted over defendant's objection.

■ Both Mrs. Mahoney and Mr. Brooks testified that when Mr. Mahoney prepared to leave Guerneville at about 3 o'clock on the Sunday morning in question, he stated that he was going to San Francisco and would be back to start on the job at Guerneville at 9 o'clock that morning. He further told them that he had to leave for San Francisco to get some data from Mr. Sullivan regarding Mr. Sullivan's territory and to get some parts from his home in San Francisco.

Defendant contends that the trial court committed prejudicial error in admitting the last-mentioned testimony but we are of the opinion that said evidence was properly admitted. It appeared from other uncontradicted evidence that Mr. Mahoney was an employee of the defendant company and that he had authority to drive the automobile of the defendant company between San Francisco and Guerneville. The foregoing declarations of Mr. Mahoney were not admitted for the purpose of proving the status of Mr. Mahoney as an employee of the defendant company or of proving Mr. Mahoney's authority to drive the automobile but said declarations were admitted to show that the trip in question was taken by Mr. Mahoney in pursuance of his employer's business rather than for purposes of his own. The rule is stated in 1 California Jurisprudence, 865, section 139, as follows: "It is a rule of long standing in California that the declarations of an agent are not admissible to prove the fact of his agency, nor the extent of his authority. They are admissible, however, to prove that his acts were done on behalf of his principal and not in his individual capacity . . . " (See, also, *Swinnerton* v. *Argonaut L. & D. Co.,* 112 Cal. 375 [44 Pac. 719] ; *Smith* v. *Firestone Tire & Rubber Co.,* 119 Conn. 483 [177 Atl. 524] ; 2 Am. Jur. 352, sec. 445; Restatement of the Law of Agency, sec. 289 ; 2 Mechem on Agency, 2d ed., p. 1367, sec. 1790.)

■ We now come to defendant's main contention. Defendant claims that Mr. Mahoney "was not acting within the scope of his employment" but as the jury found to the contrary, we must necessarily assume that it is defendant's contention on this appeal that the evidence was insufficient to sustain said finding of the jury. We find no merit in this contention. We may disregard for the moment the declara-

tions of Mr. Mahoney regarding the purpose of the trip. When evidence was introduced showing that Mr. Mahoney was the employee of the defendant company and was driving the automobile of the defendant company, the jury was entitled to draw the inference that he was acting within the scope of his employment. (*Bushnell* v. *Yoshika Tashiro,* 115 Cal. App. 563 [2 Pac. (2d) 550]; *Barton* v. *McDermott,* 108 Cal. App. 372 [291 Pac. 591].) An inference may be dispelled as a matter of law but only by clear, positive and uncontradicted evidence to the contrary. (*Engstrom* v. *Auburn Auto. Sales Corp.,* 11 Cal. (2d) 64 [77 Pac. (2d) 1059].) We find no such clear, positive and uncontradicted evidence to the contrary in this case. Defendant's evidence showed that Mr. Mahoney's main duties were confined to the Guerneville area, but there was ample evidence in the record to show that Mr. Mahoney's incidental duties required him to drive and that he was authorized to drive the defendant's automobile outside of that area. In fact, it appears that his bridge tolls on his trips between Guerneville and San Francisco were entered on his expense account and paid by the defendant. Considering all of the evidence, other than the declarations of the deceased regarding the purpose of the trip, it cannot be said that it so clearly and positively showed that Mr. Mahoney was not acting within the scope of his employment, that the above-mentioned inference was dispelled as a matter of law. There was still a question of fact for the determination of the jury. The inference thus remained and was strengthened by the evidence of the declarations of the deceased regarding the purpose of the trip. We have heretofore expressed the view that said declarations were properly admitted in evidence. We therefore conclude that the jury's implied finding to the effect that Mr. Mahoney was acting within the scope of his employment was amply sustained.

Before proceeding to defendant's final contention, it may be stated that defendant has laid some stress upon the evidence showing that Mr. Mahoney had a cocktail before dinner on Saturday evening and had some beer between that time and the time of his departure. It is apparently conceded that there was no evidence of heavy drinking and no evidence of intoxication. All of the direct evidence on the subject showed that both Mr. Mahoney and Mr. Brooks were entirely sober. Before undertaking the trip to San Fran-

cisco, Mr. Mahoney changed to his business clothes, prepared some food and coffee for himself and Mr. Brooks and left after declaring the purpose of his trip to Mrs. Mahoney and Mr. Brooks. The jury no doubt believed that it was highly improbable that Mr. Mahoney would have undertaken the trip at that time unless he had felt that the journey was required in furtherance of the business of his employer.

Defendant's final contention is that the trial court erred in refusing a requested instruction "upon effect of limitation upon permission to use an automobile". This contention requires no extended consideration. It related only to the subject of permissive use of the automobile and the uncontradicted evidence showed that Mr. Mahoney had permission to use the automobile to travel between Guerneville and San Francisco.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 31, 1939, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 29, 1939.