[Civ. No. 3231.   Fourth Dist.   Nov. 8, 1943.]

LEONARD C. BURCH, Appellant, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY (a Corporation), Respondent.

Hildebrand & Bills and Martin & Downey for Appellant.

J. C. Gibson, Leo E. Sievert, H. K. Lockwood and Jesse W. Curtis, Jr., for Respondent.

BARNARD, P. J.—This is an action for damages brought by an employee against a common carrier engaged in inter-

state commerce, being based upon an alleged violation of section 11 of the Federal Safety Appliance Act. (45 U.S.C.A., sec. 11.) That section provides, in part, that ''All cars requiring . . . secure running boards shall be equipped with such . . . running boards.'' The plaintiff appeals from a judgment which was entered after the court directed a verdict in favor of the defendant. The sole question presented is whether or not there was any substantial evidence tending to prove that the running board on top of a certain freight car was insecure within the meaning of the provision to which we have referred.

About 1:15 a. m. on the morning of February 22, 1942, the appellant was engaged in switching freight cars in the respondent's yards at Barstow. The car in question was an ordinary freight car, equipped with a running board along its top consisting of planks laid end to end and three planks wide, the planks being bolted at frequent intervals to crosspieces, with bolts having screw heads and with nuts on the other end. Apparently, the heads of these bolts had originally been countersunk so that they were flush with the surface of the running board. This particular car had been sideswiped at Needles a short time before and was being taken to San Bernardino for repairs, with a tag upon it indicating that it was in bad order but that it could be moved.

At the time in question this car had just been ''kicked'' onto a side track and was rolling in a westerly direction. It was the appellant's duty to ride the car ''into the clear'' and then to stop the car by means of a hand brake. The appellant boarded the car at its westerly end, carrying an electric lantern, and then proceeded along the running board in a direction opposite to that in which the car was moving in order to reach the hand brake which was at the easterly end of the car. As he neared that end of the car he fell, his body being thrown over the end of the car and down to the track below, with resulting serious injuries. He had not set the brake and the car was stopped by running into another car. It is appellant's contention that he caught his foot on a raised bolt or screw on this runway, which caused his fall.

The appellant testified that he was walking along this runway at ''a pretty fair clip''; that as he neared the east end of the car he tripped either on a screw or a raised joint in the boards, but he thought it was a screw; that he was just walking and tripped; that he was so near the end of the car that when he fell he went over the end; that he did not

take any steps after he tripped as "my foot was tied"; that "It just seemed hung, just the same as if it had been tied." When asked to explain this more fully he replied: "Here is the foot, and here comes the right one, and 'of course my body is going forward, and when it gets here it hooks on something, seemed as though it had gone under something, or probably the sole had gone under something, and it was tied, absolutely hung there. There was no releasing it, and of course, going forward, the weight of my body going forward, when my foot was tied, naturally I fell." Again he testified: "Well, I went on top of the car to set the brake, and in going from one end of the car to the other, I hung my foot on a screw, or a nut on the running board, causing me to lose my balance, over the end of the car to the ground."

The respondent concedes that this part of the appellant's testimony, if it stood alone, would probably be sufficient to support a verdict in his favor. It is contended, however, that the effect of this evidence is destroyed by his testimony on cross-examination and by other evidence showing that this running board was in good condition, with the result that when the evidence is viewed as a whole it discloses no substantial evidence which would have supported a verdict for the appellant.

■ On cross-examination, the appellant testified that due to the darkness he did not see what it was he stumbled on; that he did not see that he stumbled on a screw; and that he did not see that he stumbled on a board. He was also asked "Then you do not have any knowledge of what it was that you stumbled on. That is true, isn't it," and he replied in the affirmative. We are unable to see how these admissions can be said to destroy the effect of his previous testimony that his foot had caught on something to the extent that he was unable to move it. It was dark, the car was moving and he was hurrying to reach the brake. Under such circumstances, it is hardly to be expected that he would have seen such a thing as a slightly raised bolt and it is not surprising that after a sudden fall he would not know the precise nature of the object upon which he had caught his foot. The fact that he did not see the object or know what it was may have a bearing on the weight of his evidence but does not destroy his previous testimony which was direct and positive to the effect that he caught his foot on something. Whether this was true was a question of fact for the jury, and the evidence

given by the appellant cannot be said to be entirely lacking in substantiality.

The respondent further contends that the other evidence introduced not only fails to substantiate the appellant's claim that the running board was insecure but also demonstrates that this running board was in good condition. Another witness for the appellant testified that he went up and looked at this running board about an hour and a half after the accident, and that he did not see any bolts protruding above the level of the running board. He was asked by a juror ''Were those bolts sticking up above the surface of the running board or were they flush—even?'' He replied, ''That is what I couldn't say for sure, whether they were sticking up, or whether they were not. They could have been sticking up, or they could have been imbedded.'' Two or three witnesses for the respondent testified that they went up and looked at this running board shortly after the accident and that they found no bolts sticking up and no raised joint in the boards, and that the running board was in good condition. There is an obvious weakness in this evidence, however, in that each of these witnesses testified that he made no examination other than to look at the running board ''visually,'' and that he made no attempt either with an instrument or with his fingers to investigate as to whether any of the bolts were loose. This might well be important, particularly since this car had been damaged and was known to be in bad order. It is not impossible that one of these bolts was loose. In that event it might have been protruding above the surface of the running board to a sufficient extent to catch the appellant's foot, and it might later have been jarred back into place when the car stopped by running into another car. This might well have been argued to the jury in support of the plaintiff's testimony and in explanation of what occurred.

An enlargement of a photograph showing the easterly end of this running board was introduced in evidence by the respondent. It was taken on the afternoon of the second day after the accident. Several witnesses for the respondent who examined the running board after the accident testified that it correctly portrayed the area in question as they observed it. This picture, which is before us, rather indicates that several of the bolts which were near the easterly end of this running board were not exactly flush with the surface thereof. On two or three of these bolts the side of the head which is farthest away from the brake end of this car seems to be

perceptibly higher than the side which is toward that end of the car. In the case of other bolts, there are shadows in the picture which might indicate that the heads of these bolts were slightly raised from the surface of the runway. While a witness for the respondent testified that these shadows were caused by depressions in the board where the bolts were countersunk a contrary inference might be drawn from the picture. This picture suggests matters which could have been argued to the jury, and it has a definite bearing upon the main issue which should have been considered.

In *Newkirk* v. *Los Angeles Junction Ry. Co.*, 21 Cal.2d 308 [131 P.2d 535], a somewhat similar case was considered, involving another clause of Section 11 of the Safety Appliance Act which requires that cars be equipped with efficient hand brakes. It was there held that under the Safety Appliance Act the particular defect in the appliance which caused the injury need not be pointed out by the evidence and that "Evidence that the brake is used in the normal and usual manner and fails to work is sufficient evidence of the inefficiency of the brake to make the issue one for the jury." While a different instrument or appliance is involved in the instant case the same rule of law could well be applied here. While much of the evidence strongly supports respondent's contentions at the trial, there is substantial evidence in the record which, if accepted by the jury, would have supported a judgment for the plaintiff. It follows, under well established rules, that a question of fact was presented and that it was error to direct a verdict for the respondent.

The judgment is reversed.

Marks, J., and Griffin, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 27, 1943. Curtis, J., did not participate therein.