[Civ. No. 5347. Fourth Dist. Feb. 20, 1957.]

HERBERT ARTHUR VIND et al., Respondents, v. ASAMBLEA APOSTOLICA DE LA FE EN CHRISTO JESUS, Appellant.

J. B. Mandel and G. C. Wilbert for Appellant.

Louis L. La Rose for Respondents.

GRIFFIN, J.—This action was filed by plaintiffs and respondents, Herbert A. Vind and wife, alleging that on October 17, 1953, defendant Raphael Arias was so negligently

operating an automobile as to cause it to crash into a car driven by plaintiff husband, which caused serious personal injuries and property damage to plaintiffs. It is then alleged that defendant Arias was the agent, servant and employee of defendant and appellant Asamblea Apostolica de la Fe en Christo Jesus, a corporation, also known as Apostolic Church of the Faith in Christ, Jesus (hereinafter referred to as the Church). Defendant Arias's answer denied negligence, denied agency, and pleaded contributory negligence of plaintiffs. Appellant Church made the same denials and defenses. A trial without a jury resulted generally in a finding in favor of the plaintiffs and a judgment was entered against both defendants for $21,943.51. Defendant Church alone appealed and the only questions presented are: (1) Is the evidence sufficient to support the finding of the trial court that the driver of the car, Arias, was then and there the agent, servant and employee of the Church; and (2) If so, was he acting within the scope of his employment?

On the day of the accident, about 10 a. m., plaintiff was driving his car north on highway 99 in Tulare County. Arias was driving his own car south on that highway. A Mr. Cota, a bishop and secretary of the Church corporation testified, under section 2055 of the Code of Civil Procedure that on October 16th, 17th and 18th, the Church was having a regional convention or a conference of all the 29 churches of the district at Tulare; that defendant Arias was then assistant pastor of a church in Sanger, the title to which was held by defendant Church; that Arias had a license to preach the gospel, baptize, and officiate at funeral ceremonies. The license bears the seal of the appellant Church corporation. It was received in evidence. He testified that some months prior to and after October 17th, the original pastor in the Sanger church was confined to the hospital and Arias was assisting the pastor in the Sanger church but was paid nothing by the Church for his services; that he was working in the daytimes at a "Frosty Freeze Company"and in the Sanger church work at night; [Arias's name and address (the address of the Sanger church) appears on the register of ministers in the Church as a deacon]; that in said defendant Church corporation the president is a bishop; that the members of the board of directors are all bishops and the bishops appoint pastors and relieve them of their appointments when necessary; that the president calls regional conventions for the purpose of fellowship and when necessary to discuss the

Church affairs. He then furnished a copy of a circular invitation which he said was sent out to "all Bishops, Elders, Pastors and the rest of the Congregation" to attend the regional convention at Tulare on October 16th, 17th and 18th. This invitation concludes with the expression: "We supplicate the different groups to take an interest in preparing, . . . this glorious feast, spiritual feast."

The constitution and by-laws of the Church corporation were received in evidence. They provide, in part, that "The amount that should be contributed by each member of the Apostolic Church shall be at least a tenth part of his earnings or possessions . . ."; and that "the Bishops, Elders, Pastors and other Ministers shall be supported from the ninety (90) per cent that is left in the Church." It is then provided that mission churches may be organized by the defendant Church corporation; that "in the conventions all the churches shall be represented by the pastors, but when, through unforeseen events the pastor cannot attend he shall appoint or delegate an assistant pastor or an ordained deacon"; "the assistants of the pastors are those ministers who occupy the second place in the government of the local church and in the absence of the pastors, and with the previous authorization by them, will be able to carry out the same functions." Although Valdez, the pastor who was ill at the time, testified he did not delegate anyone to appear for him at the convention and at the conference, this testimony might be overcome by other evidence.

A Mr. Gaylord, testifying for plaintiffs, said he and Mr. Vind called on the witness Cota at a church in Tulare and Cota told them Arias was a representative of the church of Sanger, the assistant pastor; that Vind suggested that Arias must have been drunk at the time he ran into plaintiffs' car because he crossed over the center line of the highway and collided with it; that Cota stated Arias was not drunk and was not a drinking man; that Cota then showed him some paper bearing Arias's name and said: "This is why Arias was coming to Tulare . . . this is his authorization . . . to appear . . . to come and attend this meeting . . . to represent the Sanger Church"; that the paper contained the signatures of certain individuals and the seal of the Church corporation. He then testified they interviewed Arias, who lived in the pastor's home in Sanger; that they discussed the amount of plaintiffs' injuries and expenses and Arias told them he received a small amount of money from the Sanger

church and had to hold a job on the outside in order to live; that he explained the absence of the regular minister on October 17th when he was on his way to Tulare to attend the Church meeting. Plaintiff Vind corroborated this testimony and said Arias told him he worked full time for the Sanger church as assistant pastor and received pay for it; that after showing him his injuries and telling him he was unable to work, Arias offered to turn his car over to plaintiff as part payment but he told Arias this would not be sufficient since he earned $13,000 a year; that he told Arias to talk it over with the officials of the Church, which he agreed to do, and let him know; that he then gave Arias his address and left, and that no correspondence was received from him or them. Arias pleaded guilty to the violation of section 525 of the Vehicle Code. A process server served Arias at the Frosty Food plant with the complaint in this action. He testified Arias said that he carried some insurance on the car but found he did not have the kind that would cover him on this accident; that he "was going to Tulare to attend a meeting for our Church"; that he was studying to be a pastor and was going to Tulare to "represent the Church." A traffic officer at the scene said he interviewed Arias and found a Bible on the seat and he believed he told the officer he was going to Tulare to preach or something connected with church work. The witness Cota and defendant Arias denied generally the wording of these purported conversations.

The president of the defendant Church testified generally as to its general laws and rights and said the corporation appoints the several pastors, owns the churches, and the pastors and their assistants, including ordained deacons, control the government of the Church, locally (which is autonomous); that he never authorized, appointed nor ordained Arias pastor of that Church to act for the corporation, and he knew he received no compensation. One of defendants' witnesses did testify that Arias did occupy part of the Sanger church premises, rent free, for over two years. Arias testified it was about one year, and he repaid it in services in caring for the pastor's wife and the local church; that he received no other compensation from the Church during the year's absence of the pastor but did give one-tenth of the salary he received from the Frosty Food store to it; and that no one told him to go to this convention but he did so on his own volition.

It affirmatively appears from the by-laws of the defendant Church that in the conventions called by its president, all

churches should be represented by the pastors. The trial court might consider, from the provisions of the by-laws, that each pastor, when attending such a convention, did represent not only his church, but represented, to some extent, the defendant church in reference to its property and the government and finances of the several churches. (*Empire Star Mines Co.* v. *California Emp. Com.*, 28 Cal.2d 33, 43 [168 P.2d 686]; *Malloy* v. *Fong*, 37 Cal.2d 356, 370 [232 P.2d 241].) The pivotal question then is whether there was any substantial evidence that Arias, the assistant pastor, during the years of sickness of the pastor of that church, was similarly authorized. There is direct evidence of the pastor, the bishop, and of Arias, that he had no such authority delegated to him. On the other hand, there is, at least, circumstantial evidence that he was so authorized. He was living on the premises of the Church during that time; he was conducting the services at night; and he was listed in the register of ministers at that address as the deacon. It was conceded that he was assistant pastor at the time. He was licensed to preach, baptize, and officiate at funerals, although the right to perform wedding ceremonies was denied to him. This limitation would not be determinative. He was otherwise actually performing the authorized duties of the pastor although there is evidence he consulted with the pastor at the hospital in reference to some of them. There is evidence that the bishop showed plaintiff some paper and said: "This is why Arias was coming to Tulare . . . This is his authorization . . . to appear . . . and come and attend this meeting . . . and to represent the Sanger church"; that that paper contained the original signatures of certain individuals and the seal of the corporation and was not the paper or invitation referred to by the bishop; and that Arias said he was going to Tulare "to represent the Church."

In *Malloy* v. *Fong, supra*, although that case is factually dissimilar, certain principles of law were applied which should be applied in the instant case. It was there held that a church supervisory body is liable for injuries caused by the tort of its agent, a church pastor, acting within the scope of his agency; that an agency relationship may be informally created, neither particular words nor consideration being required, but simply conduct by each party manifesting acceptance of a relationship whereby one of them is to perform work for the other under the latter's direction; that the rule of *respondeat superior* applies to ecclesiastical bodies; that

evidence that a church supervisory body had the right to install and remove its ministers, to approve or disapprove their transfers to other jurisdictions, and to supervise and control the activities of its local churches, particularly those in the mission stage, supports the conclusion that the body had a sufficient right to control the activities of the pastor of a local embryonic church to establish an agency relationship; and that a finding of agency relationship between a church pastor and another is supported by evidence that the other gratuitously assumed the pastor's responsibility for the supervision and control of instruction and activities connected with a church Bible school during the illness of the pastor, that such participation was essential to the conduct of the school, and that he continued to perform duties in connection therewith under the supervision of the pastor after the latter's assumption of authority.

The mere citation of its constitution and by-laws would not, in itself, absolve the Church from the acts of Arias in the tort action if, in fact, he was its agent. (*Chamberlain* v. *Southern Calif. Edison Co.*, 167 Cal. 500 [140 P. 25]; *Kroupa* v. *Oak Park Theatre Co.*, 111 Cal.App.2d 514 [244 P.2d 985].)

While the evidence might well have justified a contrary conclusion, the finding of the trial court that he was authorized to represent the Sanger church, as its pastor, and was an official of or an agent or employee of defendant Church at the time is supported by the evidence.

The next claim is that if Arias could be held to be an agent of defendant Church, there was no substantial evidence indicating he was acting within the scope of his authority at the time of the accident since he had no duty to attend the convention and since he was driving his own car; that it was of no benefit to the defendant Church that he used this particular means of locomotion, nor was it within the contemplation of his superiors that he do so; that he had a choice of means of conveyance and the Church had no authority to designate his means of conveyance; and that the claimed admissions of Arias were not binding on the Church corporation, citing such authority as *McVicar* v. *Union Oil Co.*, 138 Cal.App.2d 370 [292 P.2d 48]; *United States* v. *Sharpe*, 189 F.2d 239; *Loper* v. *Morrison*, 23 Cal.2d 600 [145 P.2d 1]; *Loos* v. *Boston Shoe Co.*, 123 Cal.App.2d 564 [266 P.2d 884]; *Barton* v. *McDermott*, 108 Cal.App. 372, 381 [291 P. 591]; and Restatement of the Law of Agency, page 508, section 229.

There is a rule which holds that if the employee is

driving in the discharge of a duty for which he was employed by the employer or for the accomplishment of a result desired by the employer the latter may be held liable under the doctrine of *respondeat superior.* (*Casselman* v. *Hartford Acc. & Indem. Co.,* 36 Cal.App.2d 700 [98 P.2d 539].) The authorities cited by appellant on this subject bear principally on "transfer" cases wherein an employee (or military personnel) was reporting to a new assignment and the mode of transportation was not the concern of the employer. Restatement of the Law of Agency, page 505, section 228, sets forth a general statement concerning the scope of employment and gives three criteria: (a) Is it the kind that a servant is required to perform? (b) Is it substantially within the authorized time and space limits? (c) Is it actuated, at least in part, by a purpose to serve the master? Comment *b* to this section states that although proof that one was in the general employment of the master does not of itself create an inference that the act was done within the scope of employment, still, if there is proof in addition, that the act tended to accomplish an authorized purpose and was done at an authorized place and time, then there is an inference the act was done within the scope of employment. (See also *Sullivan* v. *Thompson,* 30 Cal.App.2d 675 [87 P.2d 62].) 2 Cal.Jur. 10-Yr.Supp., p. 492, § 315, restates this general rule.

Having previously held that it was proper to find, under the evidence, that Arias was, at the time, in the employ of defendant Church, it might well appear that the meeting at Tulare was called, not only to discuss the relationship between the Mother Church and the member churches but also the relationship of the Mother Church to the individual members respecting tithing, and that Arias would be the one to administer the rules or orders made by the appellant organization. Under the circumstances it might well appear that the Mother Church, the member church in Sanger, and the assistant pastor, acting for the incapacitated pastor, were all jointly interested in and directly affected by the meeting in Tulare. There was a written statement signed by the bishop that he was certain that Arias was not drinking, that "he was attending Church . . . we had a conference in Tulare that same day." This might well indicate he was requested to be present at this conference, separate from the convention, and that he was using his own car in response to that request and for the purpose indicated. There is some corroboration of the fact that Arias was expected to be at that

conference, notwithstanding the testimony of other witnesses, because on the first occasion possible he had someone call the bishop and tell him of the accident and of his inability to be present at the time indicated. However, he did testify that he subsequently attended but sat in the audience and did not participate in the conference. There is considerable evidence and authority is cited which might well have supported a finding in favor of the Church on this issue too. The cases are far from being in harmony on the subject as to the quantum of proof required to show agency sufficient to establish liability under the theory of *respondeat superior.* (2 Cal. Jur. 10-Yr.Supp., p. 492, § 314, and cases cited under West's Annotated California Codes, Civ. Code, § 2338.) Under the latter section a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business. (*Boynton* v. *McKales,* 139 Cal.App.2d 777 [294 P.2d 733].) In *Lockheed Aircraft Corp.* v. *Industrial Acc. Com.,* 28 Cal. 2d 756 [172 P.2d 1], it is said that where the employee is combining his own business with that of his employer or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, and he will be held to be serving his employer unless it clearly appears that neither directly nor indirectly could he have been serving the employer. The by-laws of defendant Church provide that its board of directors, 12 in number, must be ministers, properly ordained, and this board is elected by the ministers. In determining the question as to whether the assistant pastor was authorized to act for the minister or pastor and was acting within the scope of his authority, the trial court had the right to draw the reasonable inferences mentioned and to find that he was so acting. Where the evidence will support different inferences, the choice of inferences is for the trial court, and its finding based on the inference drawn cannot be disturbed on appeal. (*Maslow* v. *Maslow,* 117 Cal.App.2d 237 [255 P.2d 65].)

It is the general rule that extrajudicial declarations of an agent are not admissible to prove either the fact of an agency or the extent of his authority. (*Barton* v. *McDermott,* 108 Cal.App. 372, 381 [291 P. 591]; *Carter* v. *Carr,* 139 Cal. App. 15 [33 P.2d 852]; 2 Cal.Jur.2d p. 692, § 46.) In the instant case there was other competent evidence produced on

the subject and appellants made no objection to the admission of the evidence at the time, on the ground indicated. No prejudicial error appears in considering that testimony. (*Nanny* v. *Ruby Lighting Corp.*, 108 Cal.App.2d 856, 859 [239 P.2d 885]; *Wilcox* v. *Berry*, 32 Cal.2d 189, 192 [195 P.2d 414].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied March 20, 1957, and appellant's petition for a hearing by the Supreme Court was denied April 17, 1957. Schauer, J., was of the opinion that the petition should be granted.