[Civ. No. 27224. Second Dist., Div. Two. Mar. 2, 1964.]

BENJAMIN MILLER, Plaintiff and Appellant, v. INTERNATIONAL CHURCH OF THE FOURSQUARE GOSPEL, INC., Defendant and Respondent; ENTERPRISE INSURANCE COMPANY, Intervener and Appellant.

Hecker, Dunford & Kenealy and James N. Kenealy, Jr., for Plaintiff and Appellant.

Spray, Gould & Bowers and Daniel O. Howard for Intervener and Appellant.

Moss, Lyon & Dunn, Gerold C. Dunn and Henry F. Walker for Defendant and Respondent.

HERNDON, Acting P. J.—Plaintiff, Benjamin Miller, and plaintiff in intervention, Enterprise Insurance Company, have appealed from the judgment of nonsuit entered in favor of defendant and respondent, International Church of the Foursquare Gospel, Inc. The action is one for general and special damages suffered by appellants as the result of a certain automobile accident involving Miller and one Gary Norman Black, a minister ordained by respondent. The jury's verdict in favor of appellants and against Black is not questioned on this appeal.

At the close of appellants' case in chief, respondent moved for a nonsuit on two grounds: (1) "There has been no evidence proving or tending to prove that Gary Norman Black at the time of this accident was the agent, servant, or employee of [respondent];" and (2) "There has been no evidence proving or tending to prove that if he was such agent, servant, or employee, he was acting within the course and the scope of that [employment] at the time of the accident."

The trial judge stated that he felt the evidence was sufficient to establish the agency relationship but held that it was insufficient to prove that Black was acting within the course and scope of his employment at the time of the accident.

"In determining whether the granting of the nonsuit was proper, the appellate court must resolve every conflict in the testimony in favor of plaintiffs, consider every inference which can reasonably be drawn and every presumption which can fairly be deemed to arise in support of plaintiffs and accept as true all evidence adduced, direct or indirect, which tends to sustain plaintiffs' case." (*Coates* v. *Chinn,* 51 Cal.2d 304, 306-307 [332 P.2d 289].)

The evidence bearing upon the determinative issues is essentially without conflict. It establishes that the respondent International Church was incorporated (1) to establish and conduct an organization to manage the affairs of the corporation and to "supervise the management of the Churches of the Foursquare Gospel"; (2) to license and ordain ministers and missionaries for the furtherance of the work of the corporation; and (3) to establish and grant charters to churches, known as Foursquare Churches, to be subject at all times to the supervision of respondent corporation.

All property or equipment acquired by any Foursquare Church is required to be held in the name of the International Church. The bylaws further provide as follows: "Par. (d). No church shall execute a general contract to build without the written consent of the District Supervisor. Such

contracts shall be in writing and signed by the proper officers of the Corporation.''

Each church is required by the bylaws to keep books of account and to prepare full and accurate monthly reports of activities in such form as is prescribed by respondent's board of directors. The original of such reports is sent to the corporation secretary, one copy to the district supervisor, and copies to such other district officers as may be designated by the district supervisor.

The bylaws provide for an ordination committee to regulate the licensing and ordination of ministers. As a prerequisite to licensing or ordination, each pastor is required to subscribe and adhere to the ''Ministers' Code of Ethics.'' That code provides in part:

''I further pledge to give loyal service to whatever office, church or ministry to which I am appointed or called and will at all times work in harmony with all superior officers and organization policies. I will recognize the Board as the governing body of the Organization and will give fullest cooperation to its decisions. . . . When ministering in the pulpit I will wear a Foursquare uniform.''

The bylaws provide for the issuance of a ''Credential Card'' to indicate that a minister has been ordained or licensed according to the requirements of the articles and bylaws. If a minister resigns from the corporation or is removed, his credentials may be revoked. The bylaws further provide that a minister shall have his credentials revoked and shall be removed from his office in the corporation or pastorate if he is found guilty of ''unchristian conduct, neglect of official duties, . . . or failure to keep, or the destroying of, Church records.''

The board of directors is empowered to remove the pastor of a Foursquare Church if it appears that he is not functioning in such a manner as to promote the best interests of his church. A pastor who desires to transfer to a pastorate in another district must secure a letter of transfer from his district supervisor.

The powers and duties of a pastor are, in part, as follows: (1) to have full responsibility for the supervision of all church services and meetings of church membership, (2) to have general supervision over all departments of the church, (3) to see that the church cooperates in all programs of the Department of Youth and Christian Education, L.I.F.E. Bible College and his district, and (4) to be codepositor of

Foursquare Church funds and to cosign checks for distribution of church funds.

The bylaws provide for a Crusader organization for church membership from the ninth grade to 35 years of age. The Crusader Constitution provides that the pastor-advisor shall attend all Crusader services, cabinet meetings, and Crusader activities. As pastor, he is an ex-officio member of all committees.

Manifestly, this evidence meets every requirement for the establishment of an agency relationship as set forth in *Malloy* v. *Fong,* 37 Cal.2d 356, 368 et seq. [232 P.2d 241]. (See also *Vind* v. *Asamblea Apostolica, Christo Jesus,* 148 Cal.App.2d 597, 601-602 [307 P.2d 85].)

 The evidence bearing upon the question whether Black was acting within the scope of his agency at the time of the accident is without substantial conflict. It establishes that shortly before the accident, defendant Black attended a youth rally being held in the Angelus Temple, a Foursquare Church in Los Angeles. He was, at that time, the pastor of the Palmdale Foursquare Church. This rally was held under the auspices of the International Church. One Gloria Gonzalez entertained at this rally by singing and playing the piano. Black appreciated her talents and invited her to sing in services at his church.

Thereafter, Gloria Gonzalez went to Palmdale and did entertain at a Crusader meeting at Black's church. On leaving the church, she left behind a key which she owned. Black was thereafter advised of this fact, and at the time of the happening of the accident, was en route to the post office to mail this key back to her. She was not a personal friend of Black's.

It is difficult to perceive how this action of Black could be held to be anything other than the normal conduct of an agent performed for the general benefit of his principal. (*Malloy* v. *Fong, supra,* at pp. 376-377; *Vind* v. *Asamblea Apostolica, Christo Jesus, supra,* pp. 602-603.) There was no evidence tending to show that Black, in returning the key left on church premises by someone who had so directly rendered a service to respondent, was in any fashion serving or pursuing any personal function, purpose or objective.

In support of the judgment, respondent asserts "[t]here is not a single provision in the Articles of Incorporation or Bylaws of International Church or in the Crusader Constitution which imposes any such duty [to return lost articles found on church premises] on any local pastor." There is, however, no requirement in the law of agency that an agent's

authorized actions must be spelled out in such minute detail. Section 2319 of the Civil Code expressly provides: "An agent has authority: 1. To do everything necessary or proper and usual, in the ordinary course of business, for effecting the purpose of his agency; . . ."

There was an abundance of evidence to support a determination that Black was acting in the course and scope of his employment at the time of the accident, and, therefore, it was error to grant the motion for nonsuit.

The judgment of nonsuit is reversed.

Roth, J., and Kincaid, J. pro tem.,* concurred.

A petition for a rehearing was denied March 26, 1964, and respondent's petition for a hearing by the Supreme Court was denied April 29, 1964.

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.