**UNITED STATES of America, Appellant,**

v.

**Richard M. ROMITTI et al., Appellees.**

**No. 19853.**

United States Court of Appeals Ninth Circuit.

July 18, 1966.

John W. Douglas, Asst. Atty. Gen., Manuel L. Real, U. S. Atty., Morton Hollander, John C. Eldridge, Walter H. Fleischer, Attorneys, Dept. of Justice, Washington, D. C., for appellant.

E. Eugene Davis, Jr., Patrick Davis, of Hindman & Davis, Los Angeles, Cal., for appellee.

Before BARNES, MERRILL, and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

This is an appeal from a judgment against the United States under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2674, for damages resulting from an automobile accident caused by the negligent driving of Mr. Moore, an employee of the United States.

All agree that the question presented is whether under the doctrine of respondeat superior as applied in California (where Mr. Moore's negligent act occurred) a private employer would be liable for plaintiff's injuries in the circumstances of this case. See, e. g., McCall v. United States, 338 F.2d 589, 592

(9th Cir. 1964); Witt v. United States, 319 F.2d 704, 707–708 (9th Cir. 1963). The United States contends the district Court erred in holding that Mr. Moore "was operating his automobile within the course and scope of his employment" when the accident occurred. Under California law this was a determination to be made by the trier of fact upon a weighing of all of the pertinent circumstances. Loper v. Morrison, 23 Cal.2d 600, 145 P. 2d 1 (Sup.Ct.Cal.1944). The issue is whether the district court's finding was clearly erroneous.

The evidence was as follows. Mr. Moore was employed by the United States as an electronics engineer assigned to Edwards Air Force Base, Kern County, California. Edwards Air Force Base maintained a secondary facility for parachute testing near El Centro, California, about 240 miles away. Mr. Moore and two other government employees (Mr. Brown, an electronics engineer and the project supervisor, and Mr. Rathbun, an electronics technician) were ordered to travel from the Kern County base to the El Centro base "to support physiological jump tests for Dyna Soar Program", and then to return to the base in Kern County. They were authorized to travel by government or commercial carrier, either air or surface, or by privately owned automobile. Travel by private automobile was "authorized between Edwards Air Force Base, California and El Centro, California, and return, only," and was to be reimbursed at the rate of ten cents per mile. Per diem was authorized in the amount of $16.00 per day, including travel time. The total cost attributable to travel was not to exceed what the cost would have been if first-class rail transportation were used.

After working at their regular duty stations during the morning of July 11, 1962, the three men left their office building about noon to drive to the El Centro facility in Mr. Moore's car. They took with them, for use in the scheduled parachute test, two electronic devices (valued at $6,600 each) and certain hand tools, all belonging to the government. They drove directly to El Centro, arrived about 5:00 p. m., and checked in at a local motel. There they met with the parachutist and with representatives of the manufacturer of the electronic equipment which was to be tested. The test could not be held the next day because of bad weather; on the second morning the men drove to the test site with the equipment and the test was conducted. Mr. Moore's car was used in carrying the men and their equipment about the base —a proper and compensable use of the vehicle under the employer's orders.

The men then returned to the motel, packed, and began the return trip to the Kern County base, transporting the electronic equipment, the hand tools, and the test data recorded on two rolls of magnetic tape and one roll of graph tape. They started the return journey between 10:30 and 11:00 a. m. The accident occurred at 1:30 p. m. on the direct route between the El Centro and the Kern County bases. There was testimony that if the men had arrived late in the afternoon they could have proceeded directly to their homes, but their vacation time would have been reduced by the number of hours remaining in the work day. Mr. Rathbun, the only one of the three men who survived the accident, testified that they intended to return directly to the Kern County base, as indeed their orders appeared to require, and that they expected to arrive during regular duty hours.[1]

To summarize, the trier of fact had before it evidence that Mr. Moore was traveling on direct orders of his employer and for the sole purpose of serving his employer's business; that he was transporting property of the employer and fellow employees (including his supervisor), both necessary to the performance of that business; that he was traveling on the most direct route between two of his employer's work locations; that he was using an expressly authorized means of transportation; that

1. Regular duty hours at the Kern County base were 7:30 a. m. to 4:30 p. m.

he was driving during regular working hours; and that he was being paid his regular salary plus per diem, plus costs of transportation. This was enough to support a finding that Moore's negligence occurred "in the transaction of the business of the agency," and therefore to justify the conclusion that a private employer would be liable under California law. Calif. Civil Code § 2338.

The government's argument to the contrary is based on this court's decision in Chapin v. United States, 258 F.2d 465 (9th Cir. 1958), which sustained a trial court determination that a soldier was not acting within the scope of his employment when involved in an accident while driving between posts on a permanent change of station under orders authorizing use of his personal automobile. The government reads *Chapin* as deciding that under California law an employee driving his own automobile *cannot,* as a matter of law, be acting within the scope of his employment where use of the private automobile is permissive rather than required, the employer exercises no control over the details of the driving, and driving is not a part of the employee's normal duties.

It is clear from a reading of *Chapin* that the court deliberately avoided any announcement that the presence of these or any other specific circumstances provided an invariable test for determining whether negligent acts were within the scope of the actor's employment. The court noted, adding the emphasis, that under California authority, *"In the last analysis, each case must be determined on its own peculiar facts and circumstances,"* and continued, "no single relevant factor is necessarily controlling." 258 F.2d at 467.

Even a brief review of the myriad of California cases in this area demonstrates that the possible permutations of relevant circumstances are so infinite that decision by classification or rule of thumb would invariably lead to arbitrary and unjust results.

In the present case the flat rule which the government suggests would preclude employer liability in circumstances in which the purpose of the rule requires its imposition. As Chief Justice Traynor said in Johnston v. Long, 30 Cal.2d 54, 61, 181 P.2d 645, 651, (Sup.Ct.Cal.1947), "The principal justification for the application of the doctrine of respondeat superior in any case is the fact that the employer may spread the risk through insurance and carry the cost thereof as part of his costs of doing business." This purpose requires that the employer assume those risks which are attributable to the employer's business, rather than to purely personal pursuits of the employee. Since the trip involved in the present case was undertaken to serve the purposes of the United States, the United States should bear the risks incidental to it. This basic fact is not affected by the circumstance that Mr. Moore's normal duties were those of an electronics engineer rather than a chauffeur, and that he was authorized but not required to provide his own automobile for use in his employer's service. The California courts have imposed respondeat superior liability where the employee was not hired as a driver and the choice of means of conveyance was his. Miller v. Int'l Church of Foursquare Gospel, Inc., 225 Cal.App. 2d 243, 37 Cal.Rptr. 309 (D.C.A.1964); Vind v. Asamblea Apostolica De La Feen Christo Jesus, 148 Cal.App.2d 597, 307 P.2d 85 (D.C.A. 1957); Dillon v. Prudential Ins. Co., 75 Cal.App. 266, 242 P. 736 (D.C.A. 1925); see also Pursell v. United States, 130 F.Supp. 882 (N.D. Cal. 1955) (Judge Hamlin, now of this court).

On the other hand, in some situations deviation from usual duties and use of other than required means may add support to an inference that the employee was not engaged in his employer's enterprise, but was on a "frolic of his own." Thus in *Chapin* these factors, plus the fact that the travel occurred during a sharp break in the course of the employment (the employee had terminated his work for his employer at one permanent station and had not yet

begun work at the next), and that the employee was given leave of absence en route, free of any obligation to his employer, permitted the inference that the employee was not furthering his employer's purposes when the accident occurred.

■ Similarly, the failure of the employer to exercise control over the employee's driving is a factor of varying importance. Existence of the power to control the physical details of the service may be crucial when the question is whether the actor is an agent or an independent contractor, but may be relatively insignificant in determining whether an admitted agent is acting within the scope of his employment.

■ In this connection it is important to notice a distinction between a principal's liability for his own negligence and his liability for the negligence of his agent. If a principal negligently employs a person who is incapable of performing the task for which he is hired, or negligently fails to exercise proper control over the agent's performance, the principal is liable for injuries due to the principal's own negligence—without regard to the doctrine of respondeat superior. Witkin, Summary of Calif. Law § 66, p. 438 (1960). See also 2 Harper & James, Law of Torts, §§ 26.1, 26.3 (1956). But the liability imposed upon the principal by the doctrine of respondeat superior is vicarious and does not rest upon the principal's fault. The fault for which the principal is required to respond is not that of the principal but that of the agent, committed in the course of the principal's business. Thus, when respondeat superior liability is asserted, "we are not * * * looking for the master's fault but rather for risks that may fairly be regarded as typical of or broadly incidental to the enterprise he has undertaken." 2 Harper & James, supra, § 26.7, p. 1376 (1956). "[W]e are no longer dealing with specific conduct but with the broad scope of a whole enterprise. Further, we are not looking for that which can and should reasonably be avoided, but with the more

or less inevitable toll of a lawful enterprise." Id. at 1376–1377. These are the standards applied by California courts. See, e. g., Johnston v. Long, supra, 181 P.2d 645 (Sup.Ct. Cal. 1947); George v. Bekins Van & Storage Co., 33 Cal.2d 834, 205 P.2d 1037, 1043 (Sup.Ct. Cal. 1949) (the employer's liability "extends far beyond his actual or possible control over the conduct of the servant"); Fields v. Sanders, 29 Cal.2d 834, 180 P.2d 684, 688–689 (Sup.Ct. Cal. 1947); Calabresi, 70 Yale L.J. 499, 544–545 (1961).

■ We assume that in exercising the election which the United States gave these employees to use a private vehicle in performing the employer's errand, the employees were motivated at least in part by considerations of personal comfort and convenience. Nevertheless, the choice also served the interests of the United States, and this is enough. Loper v. Morrison, 145 P.2d 1, 4 (Sup.Ct. Cal. 1944); United States v. Wibye, 191 F.2d 181 (9th Cir. 1951). See also Hinson v. United States, 257 F.2d 178, 182 (5th Cir. 1958); Cooner v. United States, 276 F.2d 220, 226, 231 (4th Cir. 1960); United States v. Kennedy, 230 F.2d 674 (9th Cir. 1956). In addition, under California doctrine, where the risk is one arising out of the employment, the employer is liable even though the act causing harm may serve the employee's needs and not those of the employer. Thus an employer whose enterprise required the presence of employees in a warehouse was liable for fire damage to stored goods caused by the careless smoking of an employee. George v. Bekins Van & Storage Co., 33 Cal.2d 834, 205 P.2d 1037, 1043 (Sup. Ct. Cal. 1949). So it is sufficient that the risk of harm to others from Mr. Moore's negligent driving was a risk incidental to the errand upon which the employer dispatched him.

We are satisfied that the trial court could properly conclude that when the accident occurred during the return trip to the Kern County base Mr. Moore was serving the business of his employer

(Lockheed Aircraft Corp. v. IAC, 28 Cal. 2d 756, 172 P.2d 1, 3 (Sup.Ct. Cal. 1946)); that he was engaged in his employer's work, and not in going to or coming from it (Schreifer v. IAC, 61 Cal. App.2d 289, 38 Cal.Rptr. 352, 391 P.2d 832 (Sup.Ct. Cal. 1964); Robinson v. George, 16 Cal.2d 238, 105 P.2d 914, 917 (1940); Ryan v. Farrell, 280 P. 945, 946 (Sup.Ct. Cal. 1929); Trejo v. Maciel, 48 Cal.Rptr. 765, 770 (D.C.A. 1966); Boynton v. McKales, 139 Cal.App.2d 777, 294 P.2d 733, 740–742 (D.C.A. 1956)); and that his employer was therefore liable for his negligent acts.

Affirmed.

BARNES, Circuit Judge (concurring).

I concur in the result but not in the opinion.