**DOBYNS–TAYLOR HARDWARE CO., Inc., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 2087.**

United States District Court
E. D. Tennessee,
Northeastern Division.

Dec. 11, 1967.

John Y. Merrell, Washington, D. C., T. R. Bandy, Kingsport, Tenn., for plaintiff.

Sherin V. Reynolds, U. S. Dept. of Justice, Washington, D. C., J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action by the plaintiff-taxpayer for a refund of federal income taxes, 28 U.S.C. § 1346(a), for its fiscal years ending August 31, 1961 and 1962, based on a claimed net operating loss carryback of $55,829.97 from its fiscal year ending two years after the latter date. The defendant's commissioner of internal revenue adjusted the taxpayer's taxable income for its tax year 1964 by disallowing the aforementioned loss, comprised of claims of $75,842.62 for bad debts, $4,500 for legal fees expended in connection therewith, and the allowance of $1,225.63 for additional contributions not theretofore claimed. The action was tried by the Court without a jury on August 21, 1967. Competing briefs have now been filed and considered.

The plaintiff-taxpayer Dobyns-Taylor Hardware, Inc. was organized in 1939 by George W. Taylor, his wife and children. The principal operation at all times was in Kingsport, Tennessee. From time to time, four other corporations were organized by the Taylor family. During the taxpayer's fiscal years 1961 and 1962, the Taylor family owned the stock of all these corporations, one of which was Dobyns-Taylor, Inc.,[1] located at Jonesboro, Tennessee. Mr. Taylor was the president and a director of both these corporations, as well as the controlling patriarch in all this family's corporate operations.

The local management of the Jonesboro operation was required to make daily, weekly, monthly, and annual reports of its operations to the Kingsport corporate office, where the books and records of all the family's corporate operations were kept, and whence all corporate bills were directed to be paid. No corporate official

---

1. Particular attention is invited to the confusing similarity in corporate names between the plaintiff-taxpayer Dobyns-Taylor Hardware Co., Inc., and Dobyns-Taylor, Inc.

or other employee of the operation at Jonesboro was permitted to sign checks on the corporate account. Merchandise for the Jonesboro outlet was purchased by the Kingsport corporation and on its books charged out to the Jonesboro operation. On December 13, 1963, Dobyns-Taylor, Inc. at Jonesboro owed the plaintiff-taxpayer at Kingsport $83,862.-50 on such account.

In anticipation of opening the Jonesboro store, Mr. Taylor arranged with the First Peoples Bank of Jonesboro for the discounting of conditional sales contracts covering merchandise sold by Dobyns-Taylor, Inc., whereunder the plaintiff-taxpayer would be responsible for the financing contracts of Dobyns-Taylor, Inc., and whereunder also the discounting institution held in a reserve account a percentage of the repayments received as a further security against prospective losses of the bank. In furtherance of this arrangement, a combined financial statement of the Kingsport, Jonesboro and a third corporation was filed with the bank, although the bank's attorney testified the bank relied on the interlocking character of the corporations, rather than on their combined financial statement as a basis of financial position.

Commencing in 1954 James C. (Jack) Taylor, a nephew of the aforenamed Mr. Taylor, was elected the vice president and was made the manager of Dobyns-Taylor, Inc. His compensation included an annual incentive bonus of 10% of the net profits of the Jonesboro corporation. He was ambitious to improve the profit picture of his store and ingratiated himself in the community through leadership in religious, civic and charitable affairs. He succeeded in becoming a valued and trusted citizen and employee, but he failed in the matter of increasing the profits of the store.

Sometime in 1958 or 1959, he undertook a circuitous criminal scheme to distort the earning and profit picture of his company. He discounted at the aforenamed bank spurious conditional sales contracts of fictitious makers and applied the proceeds to purchasing, outside of routine channels, new merchandise or to paying suppliers of merchandise, also outside of normal channels, cashier's checks of the bank. As payments became due on the initial bogus contracts, Mr. Jack Taylor obtained funds by discounting additional spurious conditional sales contracts and made payments with such proceeds.

The manager at Jonesboro concealed his machinations from his uncle and other members of his family by reporting the spurious sales as having been genuine, but he did not seek credit for or reimbursement of the cost of merchandise thus sold. He maintained no company records of the spurious transactions, and, although the precise manner in which this Mr. Taylor misappropriated the large funds thus received was never clearly discernable, the Court finds that these funds were appropriated to this Mr. Taylor's own use in some manner known at least to him. It would appear that the decreased expenditure for purchases of merchandise, if this Mr. Taylor is to be believed, would have resulted in inflated profits at Jonesboro. Such, however, was not the statistical result on the company books. Profits at the Jonesboro store ranged from 4% to 5% before Mr. Jack Taylor became manager and remained at about 5% during his tenure.

In 1963 Mr. Guy Culbertson, who was secretary-treasurer of both the Kingsport and Jonesboro corporations, noticed that the annual payment from the aforementioned reserve account to the corporation at Jonesboro was not as great as should be anticipated from the volume of business done and made inquiry of an official of the bank. He was advised by Mr. Don C. Boyer, vice president and manager of the bank's branch at Jonesboro, that the reserve payment was low, because the credit extended on account of the Jonesboro sales amounted to $427,142.00! This prompted an investigation and a revelation that the bank held genuine conditional sales contracts of the aggregate sum of only $80,882.00, while

spurious conditional sales contracts aggregated $336,260.00.[2]

The matter of the respective liabilities was afterward referred by the bank to its attorney, and the plaintiff-taxpayer engaged attorneys to represent and protect its interests. Demands and counter-claims were interchanged between adversary counsel, and negotiations were had through them, leading to a settlement out of court. At a meeting of the directors of the plaintiff-taxpayer on December 27, 1963, it was agreed that plaintiff taxpayer Dobyns-Taylor Hardware Co., Inc., would pay the bank $157,568.11 in exchange for its release of both corporations from all liability on account of the aforementioned net loss of $315,136.23; authority was given for officials of the plaintiff-taxpayer to borrow $150,000 from the Hamilton National Bank, Knoxville, Tennessee, under a note due and payable in 90 days; and, the aforementioned Mr. George Taylor was authorized to purchase the assets for the plaintiff-taxpayer of Dobyns-Taylor, Inc., subject to its liabilities, with its inventory, furniture and fixtures to be fixed at book value, and to apply the net amount owing the Jonesboro corporation for purchase-money as a credit on the indebtedness of Dobyns-Taylor, Inc. to the plaintiff-taxpayer, including the indebtedness created by the advancement of $157,568.11 by the plaintiff-taxpayer to Dobyns-Taylor, Inc. to settle the bank's claim.

This settlement was consummated on December 31, 1963, the plaintiff-taxpayer issuing its check for $157,568.11 to the bank in consideration of the release of Dobyns-Taylor, Inc. and charging such amount to the account of Dobyns-Taylor, Inc. At this time, and since, Mr. Jack Taylor was woefully insolvent. The stockholders and directors of Dobyns-Taylor, Inc. ratified the foregoing settlement on January 8, 1964, agreed to sell its assets, subject to its liabilities, as proposed by the plaintiff-taxpayer, and voted to dissolve the corporation. It was subsequently liquidated, and its charter of incorporation was surrendered on February 7, 1964. On the last day of that month, its net assets of $169,490.95 were transferred, at the book value as of January 31, 1964, to the plaintiff-taxpayer, which also paid its attorneys the fair and reasonable fee of $4,500 for their services as aforesaid.

■ The plaintiff-taxpayer argues appropriately that by reason of the aforementioned facts, it is entitled to a refund of its taxes, whether alternately, as a net operating loss, a deduction for a bad debt, or an ordinary and necessary business expense incurred in its trade or business. Bratton v. Commissioner of Internal Revenue, C.A.6th (1954), 217 F.2d 486, 489 [7]. Viewed from the standpoint of an intercorporate transaction, the plaintiff-taxpayer is not entitled to claim the refund as a deduction for a bad debt, because the advancement by the plaintiff-taxpayer to Dobyns-Taylor, Inc. of $157,568.11, if constituted an ordinary loan, was worthless to the extreme extent of $75,842.63 when it was made. Cf. Bratton v. Commissioner, supra, 217 F.2d at 488 [1].

This Court is of the opinion, however, finds and concludes that the aforementioned items of $157,568.11 and $4,500 are deductible by the plaintiff-taxpayer as a " * * * loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * " 26 U.S.C. § 165(a). "For purposes of subsection (a) [of 26 U.S.C. § 165], any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss. * * * " 26 U.S.C. § 165(e). The theft of Mr. Jack Taylor was discovered by the plaintiff-taxpayer in its fiscal tax year 1964.

■ " * * * [T]he word 'theft' is not like 'larceny', a technical word of art with a narrowly defined meaning

2. The loss on these contracts was subject to a reduction of $21,123.77 in unearned discount fees, rendering a net loss of $315,136.23.

but is, on the contrary, a word of general and broad connotation, intended to cover and covering any criminal appropriation of another's property to the use of the taker, particularly including theft by * * * any other form of guile. . * * " Edwards v. Bromberg, C.A.5th (1956), 232 F.2d 107, 110 [2], 62 A.L.R.2d 565. Theft includes embezzlement. Alison v. United States (1952), 344 U.S. 167, 170, 73 S.Ct. 191, 97 L.Ed. 186, 191 (headnote 4). " * * * Whether and when a deductible loss results from an embezzlement is a factual question, a practical one to be decided according to surrounding circumstances. * * * " Idem., (headnote 2), citing Boehm v. Commissioner of Internal Revenue, (1945), 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78, 166 A.L.R. 708. " * * * [I]t has been long and well established that whether a loss from theft occurs within the purview of Section 23(e) (3) of the Internal Revenue Code [now codified as 26 U.S.C. § 165(e)] and the corresponding provisions of prior acts, depends upon the law of the jurisdiction where it was sustained and that the exact nature of the crime, whether larceny or embezzlement, of obtaining money under false pretenses, swindling or other wrongful deprivations of the property of another, is of little importance so long as it amounts to theft. * * * " Edwards v. Bromberg, supra, 232 F.2d at 111 [3].

■ Theft, larceny and embezzlement all are crimes against the state of Tennessee. T.C.A. § 39, ch. 42. One form of these crimes is embezzlement by a corporate officer, clerk or employee, viz.: " * * * Any officer, agent, employee or clerk of any incorporated company * * * who embezzles or fraudulently converts to his own use any money or property of any other, which has come to his possession, or is under his care by virtue of such employment, shall, on conviction, be punished as in case of larceny. * * * " T.C.A. § 39–4232. A prosecution for embezzlement is proper in Tennessee under this statute if the defendant is an officer, agent, employee, or clerk of a corporation, Switzer v. State

(1964), 213 Tenn. 671, 679 [4], 378 S.W. 2d 760, although the fraudulent breach of trust statute in Tennessee, T.C.A. § 39–4226, is more comprehensive and covers many acts of wrongdoing not embraced in the embezzlement or larceny statutes of Tennessee. Ibid., 213 Tenn. at pages 680–681 [5], 378 S.W.2d 760.

■ The Court finds and concludes that Mr. Jack Taylor's aforementioned activities amounted to a criminal appropriation of another's property to his own use. The remaining question is whether his unlawful taking was from the plaintiff-taxpayer.

■ The defendant's administrator urges this Court to hold that, because the plaintiff-taxpayer and Dobyns-Taylor, Inc. were separate legal entities, and Mr. Jack Taylor was nominally an officer and manager of the latter corporation, his unlawful taking was from Dobyns-Taylor, Inc. and not from the plaintiff-taxpayer. This does not necessarily follow, where, as here, a parent corporation controls a subsidiary company " * * so that it may be used as a mere agency or instrumentality * * * " of the parent corporation. " * * * In such a case the courts will not permit themselves to be blinded or deceived by mere forms of law but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require. * * * " Chicago, M. & St. P. R. Co. v. Minneapolis C. & C. Asso. (1918), 247 U.S. 490, 501, 38 S.Ct. 553, 557, 62 L.Ed. 1229, 1237. Or, as has more recently been observed: " * * * Where it is necessary to do so in order to do justice, the courts have not infrequently disregarded the separate corporate entities and treated the two corporations as one. United States v. Reading Co. [1920], 253 U.S. 26 [63], 40 S.Ct. 425, 64 L.Ed. 760 [781], and cases there cited; Southern Pacific Co. v. Lowe [1918], 247 U.S. 330, 337, 338, 38 S.Ct. 540, 62 L.Ed. 1142 [1148]; Gulf Oil Corporation v. Lewellyn [1918], 248 U.S. 71, 39 S.Ct. 35, 63 L.Ed. 133 [134]. * * * " California Zinc Co. v. United

States, Ct.Cl. (1947), 72 F.Supp. 591, 593 [1].

The domination of Dobyns-Taylor, Inc. by the plaintiff-taxpayer was so complete that, by the general rules of agency, the plaintiff-taxpayer is considered the principal and Dobyns-Taylor, Inc. as its agent. Mr. Justice Douglas recently observed: " * * * [A]s Mr. Justice Cardozo said in Berkey v. Third Ave. R. Co., 244 N.Y. 84, 95, 155 N.E. 58, 61, 50 A.L.R. 599, 'Dominion may be so complete, interference so obtrusive, that by the general rules of agency the parent will be a principal and the subsidiary an agent. Where control is less than this, we are remitted to the tests of honesty and justice.' That is not a complete catalogue. The [two] companies may be represented as one. Apart from that is the question whether in fact the economic enterprise is one, the corporate forms being largely paper arrangements that do not reflect the business realities. One company may in fact be operated as a division of another; one may be only a shell, inadequately financed; the affairs of the [two] may be so intermingled that no distinct corporate lines are maintained. These are some, though by no means all, of the relevant considerations, as the authorities recognize. * * * " 3 N.L.R.B. v. Deena Artware (1960), 361 U.S. 398, 403, 80 S.Ct. 441, 443, 4 L.Ed. 2d 400, 405 (headnotes 4, 5), reversing C.A.6th (1958), 261 F.2d 503 (on its failure to order discovery procedures).

" * * * 'A corporation will be treated as a distinct legal entity, ordinarily, and until proof is adduced to the contrary. But that notion will not prevail when the result would be to give countenance and effect to a mere sham and work injustice.' * * * " Nashville, C. & St. L. Ry. v. Faris (1932), 166 Tenn. 238, 244 (1), 60 S.W.2d 425, 427. " * * * Whether a subsidiary corporation is to be considered a separate entity 'cannot be asked, or answered, *in vacuo*' * * *; the issues in each case must be resolved in the light of the policy underlying the applicable legal rule, whether of statute or common law. Contrast Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 37 S.Ct. 506, 61 L.Ed. 1148 (1917), and Chicago, M. & St. P. Ry. v. Minneapolis Civic & Commerce Ass'n [supra], 247 U.S. 490, 38 S.Ct. 553, 62 L.Ed. 1229 (1918), with In re Gibraltor Amusements, Ltd., 291 F.2d 22 (2 Cir.), cert. denied, 368 U.S. 925, 82 S.Ct. 360, 7 L.Ed.2d 190 (1961), and Empresa Hondurena de Vapores, S. A. v. McLeod, 300 F.2d 222 (2 Cir. 1962). * * * " Bowater Steamship Company v. Patterson, C.A.2nd (1962), 303 F.2d 369, 372 [4].

" * * * This question of fact depends on many circumstances overcoming or failing to overcome the indicia of separate entities, sameness of members, officers and objects, and the absence of distinct interests, being indicia of agency or identity, while differences in officers, objects, or conduct are indicia of separate recognizable entities. * * * " 4 1 Fletcher Cyclopedia Corporations (perman. ed., revis. 1963) 210–212, § 43. " * * * The rules for determining identity of corporations, principal and subsidiary, upon the ground that one is but an agency of the other, are abstract and mainly negative in character; and when they are to be taken out of the general rule of separate entities, the courts look at them through these negative rules to the truth as it is. Operational departments or branch corporations, and sales organizations, afford illustrations of corporations disregarded on the facts. * * * " Ibid., at page 216, § 43. Affiliated corporations have sometimes been held to be a single employing unit, because of intercorporate control, for purposes of unemployment compensation tax. Washington Oil Corp. of Texas v. State, C.Civ.App.Tex. (1941), 159 S.W.2d 517; Florida Industrial Commission v. Schwob Co. (1943), 153 Fla. 356, 14 So.2d 666.

---

3. References to citations in footnotes omitted.

4. Reference to citations in footnote omitted.

The Court found and concluded that Dobyns-Taylor, Inc. was operating as a departmental or branch corporation of the plaintiff-taxpayer, cf. Bishop v. United States, C.A.8th (1926), 16 F.2d 410, 412–415 [3]; this is a mere collateral finding and conclusion. The critical question is whether Mr. Jack Taylor was, in fact, the employee of the plaintiff-taxpayer, so that his criminal appropriation of another's property to his own use constituted a taking from the plaintiff-taxpayer.

█ The employer-employee relationship of Mr. Jack Taylor is determined primarily on the plaintiff-taxpayer's right of control, and that question is determined by the functions performed by each corporation and by this Mr. Taylor. Mohan v. Publicker Industries, Inc. (1966), 422 Pa. 588, 222 A.2d 876. The agency relationship between this Mr. Taylor and the plaintiff-taxpayer is comparable to the agency relationship between an international church corporation and the pastor of a local church. Cf. Miller v. International Church of Four Square Gospel, Inc. (1964), 225 Cal.App. 2d 243, 37 Cal.Rptr. 309. Mr. Jack Taylor could only do at Jonesboro that which was directed and permitted by his superiors at Kingsport. So complete was the dominion over this Mr. Taylor on the part of officials of the plaintiff-taxpayer, and so obtrusive was interference with him from that source, that, by the general rules of agency, Mr. Taylor was the agent, not of Dobyns-Taylor, Inc., but of Dobyns-Taylor Hardware Co., Inc. Berkey v. Third Avenue R. Co., supra. He, in other words, was the employee of the plaintiff-taxpayer. Cf. Buie v. Chicago, R. I. & P. R. Co. (1901), 95 Tex. 51, 65 S.W. 27; accord: St. Louis & S. F. R. Co. v. Sizemore, C.Civ.A.Tex. (1909), 53 Tex.Civ.App. 491, 116 S.W. 403.

It was stipulated that, should the plaintiff-taxpayer sustain its return for its tax year 1964, it is entitled to its claimed refunds for its tax years 1961 and 1962. Accordingly, under the Court's findings and conclusions hereinabove, the plaintiff-taxpayer will recover such amounts. The clerk will prepare, sign and enter a judgment for the plaintiff Dobyns-Taylor Hardware Co., Inc. against the defendant United States of America for $9,228.27 with interest from the proper date and the further sum of $13,142.34 with interest from the proper date.