**UNITED STATES of America,**
**Appellant,**

v.

**Noel Hunt McROBERTS et al., Appellees.**

**No. 22078.**

United States Court of Appeals
Ninth Circuit.

March 11, 1969.

Rehearing Denied May 29, 1969.

---

Robert Zener (argued), Washington, D. C., Wm. M. Byrne, Jr., U. S. Atty., Los Angeles, Cal., Carl Eardley, Acting Asst. Atty. Gen., Edwin L. Weisl, Jr., Asst. Atty. Gen., Morton Hollander, Patricia S. Baptiste, Attys., Dept. of Justice, Washington, D. C., for appellant.

Daniel C. Cathcart (argued), of Magana, Olney, Levy & Cathcart, Los Angeles, Cal., for appellees.

Before MERRILL, ELY and CARTER, Circuit Judges.

## PER CURIAM:

The appellees instituted suit in the District Court against the Government under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674. The complaint alleged negligent operation of an automobile by a military serviceman named Bryant. The Government did not contest the allegation of negligence but contended that Bryant was not acting within the scope of his employment at the time of the accident out of which the suit arose. The District Court found that the serviceman was within the scope of his employment and entered judgment in favor of the appellees. The Government appeals. Our jurisdiction rests on 28 U.S.C. § 1291.

Bryant had been stationed at Travis Air Force Base, California, prior to the accident. In November, 1963, he received orders permanently transferring him from that station to the 315th Troop Carrier Group, Pacific Air Force, APO San Francisco, where he was to report on March 14th, 1964. In the interim, Bryant was authorized 45 days' leave following which he was to report for temporary duty, commencing January 20, 1964, at Pope Air Force Base in North Carolina. After a thirty-seven day training course there, he was to have spent an additional three days of temporary duty with the 405th Fighter Wing, Pacific Air Force, APO San Francisco, before his scheduled report to the 315th Troop Carrier Group on March 14th. The Government authorized Bryant to travel, if he so desired, by common carrier, in which event he was to ship his military gear. He elected, however, to drive his own automobile. Accordingly, he took his military gear with him in the car. The Government authorized advance travel pay and appropriate travel time for the distance between the military bases.

Bryant departed from Travis Air Force Base on November 19, 1963. He intended to spend the subsequent Thanksgiving and Christmas holidays with members of his family at their home in New Jersey. The next day, November 20th, he was driving east along cross-continental Route 66 in California when his negligent passing maneuver caused the accident for which the appellees contend that the Government is responsible. On November 23rd, Bryant returned to Travis Air Force Base, and his previous orders were cancelled shortly thereafter. He was charged with leave time for his days away from his military base and was required to refund his entire travel allowance. A few

months later, Bryant was discharged from the Air Force.

 In resolving the sole issue before us, we must apply the *respondeat superior* principles of California, the state wherein the alleged tort was committed. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); United States v. Romitti, 363 F.2d 662 (9th Cir. 1966); Witt v. United States, 319 F.2d 704 (9th Cir. 1963); Chapin v. United States, 258 F.2d 465 (9th Cir. 1958), *cert. denied,* 359 U.S. 924, 79 S.Ct. 607, 3 L.Ed.2d 627 (1959). In our view, the facts of the present case are the same in all relevant aspects as those which were presented in our case of *Chapin.* We based the *Chapin* decision on a California case involving analogous facts. *See* McVicar v. Union Oil Co., 138 Cal.App.2d 370, 292 P.2d 48 (Dist.Ct.App.1956). In the light of these authorities, we must conclude that Bryant was not acting within the scope of his employment when the accident occurred.

The appellees argue that we should reach a different result on the basis of our decision in United States v. Romitti, *supra.* The *Romitti* court employed certain broad language, but we read the opinion as basing the ultimate conclusion upon the peculiar facts, significantly different from those before us now. The Government had ordered its employee, a civilian engineer, to depart from Edwards Air Force Base to conduct a day's testing at a site in El Centro, California, 240 miles away, and to return. He was authorized any means of travel, and he chose to drive his automobile, later involved in an accident on the return trip. The employee received a per diem expense allowance and automobile travel expenses based on mileage. He was not on vacation at any time during his assignment. The Government, in agreeing to pay his travel expenses, authorized the use of his car "between Edwards Air Force Base, California and El Centro, California and return, only

* * *." 363 F.2d at 664. Even if we should here apply the broad language of *Romitti,* the application would not support the conclusion that Bryant was at the time of his accident acting within the course and scope of his governmental duties. We read from *Romitti,* at 665–66, the following:

> "[I]n some situations deviation from usual duties and use of other than required means may add support to an inference that the employee was not engaged in his employer's enterprise, but was on a 'frolic of his own.' Thus in *Chapin* these factors, plus the fact that the travel occurred during a sharp break in the course of the employment (the employee had terminated his work for his employer at one permanent station and had not yet begun work at the next), and that the employee was given leave of absence en route, free of any obligation to his employer, permitted the inference that the employee was not furthering his employer's purposes when the accident occurred."

In *Romitti,* the employee was traveling on a special errand for his employer when the accident occurred and was thus actively engaged in the course of his employment. This was not so in *Chapin,* wherein a serviceman was engaged, at the time of his automobile accident, in a permanent transfer of his military station. His military orders directed him to proceed from Norton Air Force Base in California "on or about April 4, 1956 [the date of the accident]; authorized travel by private automobile * * * provided for four days delay en route; and directed him to report for duty at Ft. Hood [Texas] April 12, 1956." 258 F.2d at 466. In this case, therefore, our conclusion rests squarely upon *Chapin,* rather than upon *Romitti.*

Upon remand, the complaint against the Government will be dismissed.

Reversed.